.BEAL et al. v. HOLCOMBE, Mayor of City of Houston, et al.

No. 13562.

United States Court of Appeals Fifth Circuit.

Dec. 20, 1951.

Rehearing Denied March 8, 1952.

Herman Wright, Arthur J. Mandell, Houston, Tex., W. J. Durham, Dallas, Tex., for appellants.

Will G. Sears, City Atty., J. Wiley Caldwell, Asst. City Atty., Houston, Tex., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

JOSEPH C. HUTCHESON, Jr., Chief Judge.

Claiming deprivation of their civil rights in violation of Sec. 1343(3), Title 28 U.S. C.A., plaintiffs, five negroes, citizens of Texas and resident taxpayers of Houston, brought this suit under Title 28, Secs. 1331 and 2201, for a declaratory judgment as to, and an injunction for the protection of, these rights.

As specifically put in the amended petition, on which the case went to trial, their claim was that, desiring and intending, if allowed so to do, to play golf on one of the municipal golf courses maintained by the City of Houston, they purchased tickets and otherwise complied with the requirements for playing golf at the course to which they had applied, but that they were denied permission to play and prevented from playing solely because of the fact that they were of African descent and members of the negro race.

The prayer of the petition was: (1) that the court declare that the policy, custom, practice and usage of the defendants in allowing white citizens of the city to use and enjoy the golf courses and denying their use to negro citizens, is a denial of the equal protection of laws, and unconstitutional and void; (2) that the court issue a permanent injunction restraining the defendants from maintaining that policy; and (3) that Art. 1015b of the Civil Statutes of the State of Texas, and Section 1434 of the Civil and Criminal ordinances of the City of Houston be declared unconstitutional as applied to plaintiffs in connection with the use of the golf courses described in this petition and decreed to be unenforced as against these plaintiffs in their right to use said golf course.

While the answer set out fully what the City of Houston had done with reference to furnishing parks on a segregated basis for its white and colored citizens, the defense, in its essence, was that the golf course at which the plaintiffs had presented themselves for play was a facility and a part of a park set apart, under the segregation policy of the city, adopted by authority of Art. 1015b, Vernon's Civil Statutes of Texas,[1] for use solely by white persons and that since the city had also set apart parks for the sole use of colored citizens, which, though there were no golf courses provided in them, were substantially equal in their facilities to those furnished in the parks set apart for whites, plaintiffs had suffered no deprivation of rights and were not entitled to a declaratory judgment and the injunction prayed for.

The prayer of the answer was: (1) that the declaration and injunction be denied; and (2) that, in the event the court ordered otherwise, the order permit defendants to provide, by rule and regulation, for the segregated, but substantially equal, use of public golf courses by negro and white citizens.

In addition to filing the above answer, defendants filed a motion for the convening of a three judge court, under Title 28 U.S. C.A., Chapt. 155, Secs. 2281 and 2284. This motion denied, the case was submitted to the court without a jury on a stipulation of facts, the substance of which, as material here, is set out below,[2] and on the testimony

1. The caption of this act was "An Act providing for the segregation * * * of the white and negro races and providing for the conferring of power and authority upon cities to pass suitable ordinance controlling the same and providing for fixing the penalty and declaring an emergency." Acts 1927, c. 103. As set out in the Civil Statutes, it is Art. 1015b "Ordinances for segregation of races Sec. 1. That the power and authority is hereby conferred upon the Cities of Texas to provide by suitable ordinance for the segregation of negroes and whites in any such city".

2. (1) That the city of Houston operates under the Home Rule Amendment to the Constitution of the State of Texas, Vernon's Ann.St.Const. art. 11, § 5, is an agency of the state, and has been delegated the right to exercise the general police power of the state subject to the provisions of its charter and the constitution and laws of the state.

(2) That the plaintiffs are residents and taxpayers, members of the Negro race; each contributes to the support and maintenance of the golf courses described in their petition through the payment of taxes;

(3) That the City of Houston maintains three public golf courses, known as Memorial Park, Glenbrook Park, and Herman Park;

(4) That the City of Houston, by ordinance, established a Municipal Golf Course Department, and that department operates the golf course.

(5) That, on the 31st day of Dec., 1942, the City Council adopted a code of civil and criminal ordinances, including Sec. 1434, which sets aside Emancipation Park for the exclusive use of colored people and provides that all other parks in the city, not set aside exclusively for the use of the colored people, shall be used exclusively by white people. In addition to Emancipation Park, Finnigan Park has been designated for colored use. There is no golf course located in any of the parks set apart for negroes. The City has recently completed the purchase of lands for a park known as Independent Heights Park, and has annexed, and is now drawing plans to equip it for exclusive use by negro citizens, another park, Clinton Park. There are 19 parks in the city, 17 of which are for white uses and 2 for negro uses.

(6) Negro citizens are not permitted to use the municipal golf courses in Herman, Memorial and Glenbrook Parks, and the agent and employees of the city exclude them therefrom by authority of Section 1434 of the City Code. The stipulation sets out in some detail the facilities provided for each of the parks. It also shows that the negro population of Houston is from 20 to 22 percent of the total population.

(7) The plaintiffs are suffering from no physical or mental defects and are qualified persons, except for their race, to be admitted to the golf courses. They and others of the negro race have sought admission to the facilities of said golf course and qualified themselves in every way to play except as to color, and were excluded solely on account thereof. They and all other persons of African descent and members of the negro race are, because they are Negroes, denied the use

of one of the plaintiffs, the substance of which is also set out below.[3]

The district judge did not treat the case, as it was, as a suit for the redress of the deprivation, for reasons of color, of the individual and personal right of the plaintiffs to play golf on facilities furnished at municipal expense to whites, while denied to negroes. He treated it, as it was not, as in short a more or less general complaint that park facilities provided for negroes were unequal to those provided for whites.

Of the opinion that the parks, as parks, furnished to whites and negroes were substantially equal in their overall facilities, he concluded,[4] "I do not think the failure to provide golf courses in parks used by negroes is, either as matter of law or fact, a discrimination against negroes."

In thus holding, the district judge erred in fact and in law. He erred in fact because, if an individual negro citizen desires to play golf on a municipal course and is prevented from doing so only because he is a negro citizen, while an individual white citizen, because he is not a negro, is permitted to do so, the fact that he is being discriminated against in the assertion of a personal and individual right, because of his color, stands out like a sore thumb, or like a large blob on the end of a small nose.

■ He erred in law because his conclusion is contrary to the general principles established by the authorities,[5] "It is the individual who is entitled to the equal protection of the laws, and if he is denied * * * a facility or convenience * * * which, under substantially the same circumstances, is furnished to another * * * he may properly complain that his constitutional privilege has been invaded."

■ What was accomplished here under the purported sanction of state law is the very thing the Constitution was written to make impossible, and the civil rights statutes forbid. This is denying to a negro, because he is a negro, his individual, his personal, right as a citizen to use and enjoy a facility furnished at the public expense while permitting a white man, because he is white, to use and enjoy it.

and enjoyment of the golf courses notwithstanding all other persons, not of the negro race, are allowed their use.

(8) The Municipal Golf Course Department, which operates the golf courses is separated both in administration and in budget from the other park and recreation facilities of Houston.

3. This witness testified that he is a citizen of Houston, president of a golf club, the Clinton Park Golf Club, of approximately 300 members; and that there are perhaps 500 negro citizens who are qualified and desire to play golf. The Clinton Park Country Club is a private club, organized and maintained by negro golf players.

4. "The stipulation shows that the four Parks used and to be used exclusively by the negroes have substantially the same facilities and equipment as the seventeen parks used exclusively by the white people, except that three of the parks used exclusively by the white people have golf courses. Plaintiffs say that this renders them substantially unequal. It is contended that even though the parks used by the negroes contain such outdoor advantages as tennis courts, baseball diamonds, softball diamonds, play grounds and apparatus, picnic grounds with tables and other equipment, they are not substantially equal to those used by the white people, solely because they have no golf courses. The contention is not meritorious. While it does not affirmatively appear that the out-of-door facilities provided by the city in the parks include many worthy games and activities of other and former days, such as town ball, mumble peg, tournaments, ring base, bush ranger, etc., it does appear that the city with wholesome care has provided for present day activities of both races. I do not think the failure to provide golf courses in parks used by the negroes is either as a matter of law or fact a discrimination against the negroes." Conclusion of Law No. 4.

5. McCabe v. Atchison, 235 U.S. 151, 161–162, 35 S.Ct. 69, 71, 59 L.Ed. 169; quoted with approval in Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208. Cf. Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114; Carter v. School Board, 4 Cir., 182 F.2d 531; Corbin v. U. S., 4 Cir., 177 F.2d 924; Brown v. Board of Trustees, 5 Cir., 187 F.2d 20; Sipuel v. Board of Regents, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247.

388

In addition to the general principles thus laid down, the precise question as to the equal right of a negro to play golf on municipal golf courses has been before the courts many times,[6] and each time the decision has been in favor of the claimed right. Because these decisions, particularly that of Judge Chestnut, in Law v. Mayor and City Council, D.C., 78 F.Supp. 346, fully and adequately discuss the question here presented, as it relates precisely to playing golf, we will not further labor it. We shall content ourselves with saying that we find ourselves in full accord with the reasons given and the results reached in the cited decisions.

■ It remains only to briefly consider, and as briefly dispose of, adversely to defendants, their contention put forward in their brief, that the case is one for three judges. That it is not such a case, the literature on the subject and all the controlling decisions make crystal clear. In Phillips v. U. S., 312 U.S. 246, at page 250, 61 S.Ct. 480, at page 483, 85 L.Ed. 800, the court said: "The history of § 266 (see Pogue State Determination of State Law, 41 Harv.L.Rev. 623, and Hutcheson, A Case for Three Judges, 47 Harv.L.Rev. 795), the narrowness of its original scope, the piecemeal explicit amendments which were made to it (see Act of March 4, 1913, 37 Stat. 1013, and Act of February 13, 1925, 43 Stat. 936, amending § 238 of the Judicial Code), the close construction given the section in obedience to Congressional policy (see, for instance, Moore v. Fidelity & Deposit Co., [272 U.S. 317, 47 S.Ct. 105, 71 L.Ed. 273] supra; Smith v. Wilson, 273 U.S. 388, 47 S.Ct. 385, 71 L.Ed. 699; Ex parte Collins, [277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990], supra; Oklahoma Gas [& Electric] Co. v. [Oklahoma] Packing Co., 292 U.S. 386, 54 S.Ct. 732, 78 L.Ed. 1318;

Ex parte Williams, 277 U.S. 267, 48 S.Ct. 523, 72 L.Ed. 877; Ex parte Public National Bank, 278 U.S. 101, 49 S.Ct. 43, 73 L.Ed. 202; Rorick v. Board of Com'rs, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242; Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249), combine to reveal § 266 not as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such."[7]

■ The judgment is reversed and the cause is remanded with directions to enter a judgment: declaring that refusing to allow plaintiffs and others similarly situated, because they are negroes, to make use, on a substantially equal basis with white citizens, of municipal facilities for playing golf, is to practice a forbidden discrimination which must be remedied; and enjoining defendants from continuing such practice. The decree, however, shall afford defendants a reasonable opportunity to promptly prepare and put into effect regulations for the use of the municipal golf facilities, which, while preserving segregation, will be in full and fair accord with its principle. This principle is that "The admissibility of laws separating the races in the enjoyment of privileges afforded by the State rests wholly upon the equality of the privileges which the laws give to the separated groups within the State."[8] In applying this principle, that equality of treatment of white and colored citizens must be afforded which will secure to both, complete and full recognition, that, under the Constitution and laws, there are not two classes of citizens, a first and a second, but one class, with all of equal rank in respect of their rights and privileges to use and enjoy facilities provided at public expense for public use.

Reversed and remanded for further and not inconsistent proceedings.

6. Law v. Mayor and City Council, D.C., 78 F.Supp. 346; Durkee v. Murphy, 181 Md. 259, 29 A.2d 253; Rice v. Arnold, 340 U.S. 848, 71 S.Ct. 77, 95 L.Ed. 621, reversing Fla., 45 So.2d 195.

7. Cf. Teeval Co., Inc., v. City of New York, D.C., 88 F.Supp. 652 and cases cited.

8. Missouri ex rel. Gaines v. Canada, 305 U.S. 337 at page 349, 59 S.Ct. 232, 236, 83 L.Ed. 208. Cf. Boyer v. Garrett, D. C., 88 F.Supp. 353, and cases it cites.