**Alfred HOLMES, Oliver W. Holmes and Dr. H. M. Holmes**

v.

**CITY OF ATLANTA, William B. Hartsfield, Mayor, City of Atlanta, Georgia, George I. Simons, Manager of Parks, City of Atlanta, Billy Wilson, Professional Manager, Bobby Jones Golf Course, City of Atlanta.**

Civ. A. No. 4621.

United States District Court
N. D. Georgia, Atlanta Division.
July 8, 1954.

J. C. Savage, City Atty., J. C. Murphy, Asst. City Atty., John M. B. Bloodworth, John E. Feagin, Henry L. Bowden, Atlanta, Ga., for defendants.

SLOAN, District Judge.

Plaintiffs, Negro citizens of the City of Atlanta, for themselves, and other Negroes similarly situated, bring this complaint, the same being, as amended, an action for declaratory judgment and to enjoin the City of Atlanta, W. B. Hartsfield, its mayor, George I. Simons, Manager of Parks, and Billy Wilson, alleged to be manager of the City's Bobby Jones Golf Course, from denying to Negro citizens on account of race, rights and privileges of using the City golf courses equal to those afforded white persons and to enjoin defendant from denying to plaintiffs and other Negroes similarly situated the use of municipal golf courses and from making any distinction on account of race or color in providing opportunities for playing golf upon municipally owned public golf courses.

In their amended answer the defendants admit the basic all factual allegations of the complaint, while denying the conclusions.

Certain stipulations were read into the record. The plaintiffs offered no further evidence and the defendants introduced as a witness Mr. George I. Simons, its manager of parks and an additional ordinance of the City of Atlanta. The defendants' demand for a jury trial was withdrawn and the case was thus tried to the Court without a jury.

Findings of Fact.

The City of Atlanta has a population in excess of 450,000 people of which approximately 30% are Negroes.

There was at all times here involved of force and effect the following ordinances of the City of Atlanta:

Sec. 68–126. "It shall be unlawful for colored people to frequent any park owned or maintained by the City for the benefit, use and enjoyment of white persons, excepting so much of Grant Park as is oc-

R. E. Thomas, Jr., E. E. Moore, Jr., S. S. Robinson, Atlanta, Ga., for plaintiffs.

292

cupied by the zoo, and unlawful for any white person to frequent any park owned or maintained by the City for the use and benefit of colored persons."

Sec. 68–120. "Establishment and Supervision of Golf Links in Parks. The Municipal Parks and Airport Committee is authorized to establish golf links and grounds in any of the parks now under its control, or upon any other property of the City, which may be set aside for this purpose, or upon any private property, the use of which may be donated to the City therefor, and to use such sums, from their apportionment to expense as they may deem advisable therefor or any additional sums that may be appropriated for this purpose. Said Committee is hereby authorized to establish reasonable rules and regulations governing the use of said golf grounds, to establish fees for the use of same and generally to exercise supervision over the grounds devoted to this purpose just as it does over the parks now under its control; Provided, that the sums received for the use of said golf grounds shall be turned into the city treasury."

The City of Atlanta, pursuant to the laws of Georgia and its charter, and as a governmental function, and as a part of public parks set aside for the exclusive use of white persons, owns and maintains and provides as public facilities seven golf courses. Three of these courses are 18 hole courses and four are 9 hole courses. Negroes are not permitted to play upon any of these courses and no golf course is provided for Negroes.

Plaintiffs, who at all times met all lawful requirements necessary for admission to play golf, on July 19, 1951 requested defendants to grant them permission to play golf on the Bobby Jones Golf Course and to permit them to use and enjoy the facilities of the other golf courses of the City on an equal basis with other citizens without regard to race, whereupon plaintiffs were denied permission to and the right to play golf as requested, such denial being upon the sole basis of the race and color of the plaintiffs.

There is in the City of Atlanta, Georgia, a club of about one hundred fifty Negro golfers, citizens of Atlanta who are qualified and desirous of playing the game of golf upon the city owned and operated golf courses. However, the plaintiffs herein are the only Negroes who ever in person applied or requested of defendants the right to play golf on the city owned golf courses.

On July 23, 1951, plaintiffs, through their attorneys, wrote to the Municipal Parks and Airport Committee of the City of Atlanta and called to the attention of the Committee that plaintiffs had been refused the right to play golf on the city courses and in that letter plaintiffs advised the Committee of the many members of the aforementioned club of colored golf players and for themselves and others similarly situated "they request permission immediately to use and enjoy the facilities of the several courses municipally owned and operated by the City of Atlanta on an equal basis with other citizens." Receiving no reply to this letter, they again wrote the Committee on August 20, 1951 and requested a reply. Letters to plaintiffs' counsel on August 28, 1951 and September 14, 1951 advised counsel that the Committee had the matter under advisement. On October 11, 1951 plaintiffs' counsel again wrote this Committee and requested a final statement as to the Committee's action, and upon the bottom of the letter is the following notation "Committee ordered hold for further study. Dec. 4, 1951." So far as the record discloses, no further action was ever taken by the Committee.

It appears from the oral testimony that money has now been set aside by the City of Atlanta to build a golf course for the use of Negroes but that the land has not yet been purchased and that it will take it at least twelve months to prepare a 9 hole golf course.

Conclusions of Law.

■ This being an action to redress the alleged deprivation, under color of

law, of the rights, privileges and immunities secured by the Constitution and laws of the United States, this court has jurisdiction.[1]

The "separate but equal" doctrine as recognized by our courts [2] is not in conflict with the Fourteenth Amendment—is unaffected by the ruling in Brown v. Board of Education, 347 U.S. 483, 495, 74 S.Ct. 686, 692, as in that case the doctrine of "'separate but equal'" was rejected only as it applied to public education. This is further evidenced by the fact that the Supreme Court at the time of the decision in Brown v. Board of Education, supra, had before it the case of Beal v. Holcombe, 5 Cir., 193 F.2d 384, on application for certiorari wherein the Court reasserted the "separate but equal" doctrine as it applied to municipally owned and operated golf courses, and the Supreme Court denied certiorari.[3]

The City of Atlanta is under no legal obligation to provide golfing facilities, but if it does so, it may not deny to a Negro, because he is a Negro, his individual, his personal right as a citizen to use and enjoy the facility furnished at public expense, while permitting a white man, because he is white, to use and enjoy it.[4]

If an individual is denied a facility or convenience which under substantially the same circumstances is furnished to others, he may properly complain that his constitutional right to equal protection of laws has been invaded.

Where, as here, the City of Atlanta owns and operates seven golf courses and sets same aside for the exclusive use of white people, and plaintiff Negroes were refused the use of such golf courses by agent employees of the city, the plaintiffs were denied equal protection of the laws to which they were entitled under the Constitution.

While it is true that the City of Atlanta may by proper city ordinance provide for the separation of the races in the use of the city golf courses, the admissibility of laws separating the races in the enjoyment of privileges afforded by the State rests wholly upon equality of privileges which the law gives to the separated groups within the State.[5]

Here no golfing facilities have been furnished for Negroes. The defendants contend that plaintiffs have no standing to obtain relief for other Negroes who have not been denied the privileges to use the city's golf courses. While it is true that ordinarily one may not sue for the deprivation of the civil rights of another, such rights being "personal and present," the facts in this case bring it fairly within the holding in Beal v. Holcombe, supra, where the plaintiffs were permitted to represent others similarly situated.

This Court being of the opinion that the facts in this case bring it squarely within the ruling in Beal v. Holcombe, supra, the directions for judgment there given will be followed here.

### Judgment.

The refusing to allow plaintiffs and others similarly situated because they are Negroes, to make use, on a substantially equal basis with white citizens of municipal facilities for playing golf is to practice a forbidden discrimination. It is therefore

Considered, ordered and adjudged that the defendants, and each of them, their agents, employees and servants be, and they hereby are restrained and enjoined from refusing to allow plaintiffs and other Negroes similarly situated, because they are Negroes, to make use, on a sub-

1. 14th Amendment to Constitution of the United States; Title 8, Secs. 41, 43, U.S. C.A. (now 42 U.S.C.A. §§ 1981, 1983); Title 28, Sec. 1343(3), U.S.C.A.

2. Plessy v. Ferguson, 163 U.S. 537, 544, 16 S.Ct. 1138, 41 L.Ed. 256; State of Missouri ex rel. Gaines v. Cannada, 305 U.S. 337, 349, 59 S.Ct. 232, 83 L.Ed. 208.

3. 347 U.S. 974, 74 S.Ct. 783.

4. Beal v. Holcombe, supra.

5. Beal v. Holcombe, supra.

stantially equal basis with white citizens of the municipal facilities for playing golf. The effect of this judgment will for a reasonable time and until the further order of this Court, be postponed in order that the defendants may be afforded a reasonable opportunity to promptly prepare and put into effect regulations for the use of the municipal golf facilities which, while preserving segregation, will be in full and fair accord with its principles. This principle is that the admissibility of laws separating the races in the enjoyment of privileges afforded by the State rest wholly upon the equality of the privileges which the laws give to the separated groups within the State. In applying this principle, that equality of treatment of white and colored citizens must be afforded which will secure to both, complete and full recognition, that, under the Constitution and laws, there are not two classes of citizens, a first and second, but one class, with all of equal rank in respect of their rights and privileges to use and enjoy facilities provided at public expense for public use.

It is further ordered and adjudged that defendant pay all costs.