B. T. FAYSON, Joseph P. Griffin, William Narcisse, Thomas Parker, Johnnie R. Wire, Earl White, Plaintiffs,

v.

Honorable Elmo BEARD, Mayor, City of Beaumont, Texas, Mrs. Willie J. Brockman, City Manager, City of Beaumont, The City of Beaumont, Jefferson County, Texas, a Corporation, Reese Martin, Commissioner of Parks, City of Beaumont, Henry Homberg, Manager, Tyrrell Park, Beaumont, Jefferson County, Texas, Defendants.

No. 2920.

United States District Court
E. D. Texas, Beaumont Division.
Sept. 7, 1955.

. Theo R. Johns and Elmo R. Willard, III (of Johns & Willard), Beaumont, Tex., and U. Simpson Tate, Dallas, Tex., for plaintiffs.

George E. Murphy, City Atty., and John D. Rienstra (of King, Sharfstein & Rienstra), Beaumont, Tex., for defendants.

CECIL, District Judge.

Plaintiffs, Negro citizens and resident taxpayers of Beaumont, for themselves and others similarly situated, bring this suit against the defendants, claiming deprivation of their civil rights in violation of Section 1343(3), 28 U.S.C.A., for a declaratory judgment and injunction.

It is undisputed that the plaintiffs have been, upon numerous occasions, refused the right to use Central and Tyrrell Parks, both municipally owned and operated public recreational facilities in the City of Beaumont, and such refusal has been, and is solely, because of their race and color, pursuant to an alleged custom and usage of the City of Beaumont to restrict the use of such public facilities to members of the white race and to exclude Negroes therefrom.

They ask the Court to declare that such practice based upon custom and

usage is unconstitutional and void for the reason that it denies the plaintiffs and members of the class they represent their privileges and immunities as citizens of the United States, their liberty, and property without due process of law, and the equal protection of the laws secured to them by Section 1 of the 14th Amendment to the Constitution of the United States, and the rights secured to them by Title 42 U.S.C.A. §§ 1981 to 1983, and they specifically claim the Constitutional right to the free and unrestricted use and enjoyment of such public recreational facilities.

The defendants, with commendable candor, admit the right of the plaintiffs to use the facilities involved in this suit, but ask the Court to fashion a decree herein which will hedge about such right to use with "reasonable regulations", and which will permit such use by the plaintiffs only upon a segregated basis, as authorized by Article 1015b, Vernon's Civil Statutes of Texas. Relying upon Plessy v. Ferguson [1] and the opinions of Chief Judge Hutcheson of this Circuit in Beal v. Holcombe [2] and Holmes v. City of Atlanta,[3] they say that, notwithstanding the Constitutional right of Negroes to use the public recreational facilities involved herein, this Court has the power to and should declare that such use can be made only upon reasonable conditions and upon a basis consistent with the principles of segregation.

With this contention I do not agree. I do not think that either Beal v. Holcombe or Holmes v. City of Atlanta are dispositive of the problem we face here. Beal v. Holcombe was decided on December 20, 1951, prior to the decisions in the School Segregation Cases,[4] and the impact of such cases and others upon the doctrine of Plessy v. Ferguson. In Holmes v. City of Atlanta, decided June 17, 1955, plaintiffs merely sought a judgment declaring the policy, practice, custom, and usage of the defendants of denying plaintiffs, and other Negro citizens similarly situated, permission and admission to play the game of golf upon the Bobby Jones Golf Course, or any other public golf course maintained by the defendants, solely because of the race and color of the plaintiffs, while at the same time extending and granting to white persons the right and privilege of admission to play the game of golf upon the said Bobby Jones Golf Course and other golf courses, would be a denial of the equal protection of the laws to plaintiffs, as guaranteed by the 14th Amendment of the Constitution of the United States. Judge Sloan of the Northern District of Georgia held such denial was violative of the Constitutional rights of the plaintiffs and declared that they had the right to play upon such golf courses on a segregated basis. This judgment was affirmed by Chief Judge Hutcheson, speaking for the 5th Circuit [223 F.2d 95], saying that the Court was "of the clear opinion, that the judgment in terms accorded plaintiffs all the relief that they asked for * * *."

The judgment in the Holmes case did afford the plaintiffs all the relief they sought, but in the case at bar to merely adjudicate the right of the plaintiffs to use the public recreational facilities herein involved (which right is conceded by the defendants) would not give plaintiffs all the relief they seek, for here they claim the Constitutional right of free and unrestricted use and enjoyment of such public recreational facilities and ask this Court so to declare.

In 1896 the Supreme Court of the United States decided Plessy v. Ferguson and laid down the "separate but equal facilities" doctrine in the field of trans-

1. 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256.

2. D.C., 103 F.Supp. 218; Id., 5 Cir., 1951, 193 F.2d 384.

3. D.C.1955, 124 F.Supp. 290; Id., 5 Cir., 1955, 223 F.2d 93.

4. Brown v. Board of Education, 347 U.S. 483, 485, 74 S.Ct. 686, 98 L.Ed. 873; Bolling v. Sharpe, 347 U.S. 497, 74 S. Ct. 693, 98 L.Ed. 884.

portation. In the School Segregation Cases, the Supreme Court of the United States specifically overruled Plessy v. Ferguson insofar as it applied to the field of public education, and placed great emphasis upon the intangible (psychological) factors involved in segregation in public schools. Mr. Justice Warren in one of the School Segregation Cases (Brown v. Board of Education) clearly expressed the opinion of the Court that equality in tangibles was not a complete answer to the problems of segregation in public schools, for notwithstanding such equality, there still existed an unconstitutional discrimination created by segregation because of the impact upon segregated students of intangible or psychological factors. In the other School Segregation Case, Bolling v. Sharpe, it was said in 74 S.Ct. at page 694: "Classifications based solely upon race must be scrutinized with particular care, since they are contrary to our traditions and hence Constitutionally suspect", and in Korematsu v. United States,[5] cited in Bolling v. Sharpe, the Court said: "All legal restrictions which curtail the civil rights of a single racial group are immediately suspect. That is not to say that all such restrictions are unconstitutional. It is to say that courts must subject them to the most rigid scrutiny. Pressing public necessity may sometimes justify the existence of such restrictions; racial antagonism never can."

After the decision in the School Segregation Cases, on May 24, 1954, the Supreme Court entered an order in Muir v. Louisville Theatrical Park Association[6] (a case involving the equality of the recreational facilities afforded Negroes and white persons by the City of Louisville, and the exclusion of Negroes from an amphitheater for theatrical productions located in a city park reserved for white people), in which the Court vacated the judgment of the lower Court and remanded the same for further consideration in the light of the School Segregation Cases and conditions that now prevail. Even before this order of May 24, 1954, and before the School Segregation Cases were decided, the Supreme Court in Rice v. Arnold,[7] where the City of Miami operated a public golf course, permitting Negroes to play one day a week and whites to play on the other days, entered an order vacating the judgment and remanded the case to the Supreme Court of Florida for reconsideration in the light of Sweatt v. Painter[8] and McLaurin v. Oklahoma State Regents.[9]

What, then, is the current status of Plessy v. Ferguson in the light of the School Segregation Cases and in light of the Supreme Court action upon certiorari in Muir v. Louisville and its action upon certiorari in Rice v. Arnold in a case involving the use of public recreational facilities? It is true that the School Segregation Cases expressly overrule Plessy v. Ferguson only insofar as it applied to the field of public education, but it seems clear to me that its action on certiorari in the Muir case, and in Rice v. Arnold, are strong indications that Plessy v. Ferguson will not, and should not, be held to be controlling in the public recreational field. If the provisions for equal tangible facilities in the field of public education do not eliminate intangible or psychological discrimination in the field of public education, how can it reasonably be said that equality in tangibles in the field of public recreation eliminates psychological factors so clearly involved in segregation based upon the color of a man's skin?

It can, of course, be argued that the intangibles are less effective in the public recreational field than in the field of pub-

5. 323 U.S. 214, 65 S.Ct. 193, 194, 89 L. Ed. 194.

6. 347 U.S. 971, 74 S.Ct. 783, 98 L.Ed. 1112.

7. 340 U.S. 848, 71 S.Ct. 77, 95 L.Ed. 621.

8. 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114.

9. 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149.

lic education, but that is to say that a little discrimination is to be condoned, but a great deal should be condemned. If the reasoning in the School Segregation Cases concerning psychological factors is sound as it relates to public education, then it must necessarily apply to the field of public recreation.

A case which is most persuasive upon me, and which convinces me Plessy v. Ferguson is no longer the law in either the field of public education or public recreation, is that of Dawson v. Mayor and City Council of Baltimore City (Lonesome v. Maxwell),[10] a per curiam opinion of the United States Court of Appeals, 4th Circuit, decided March 14, 1955. Here, Negroes sought a declaratory judgment and injunctive relief against the enforcement of racial segregation in the enjoyment of public beaches and bathhouses maintained by the public authorities of the State of Maryland and the City of Baltimore at or near that City. The per curiam opinion by Chief Judge Parker and Judges Soper and Dobie is brief, and I quote from it:

"Notwithstanding prior decisions of the Supreme Court of the United States striking down the practice of segregation of the races in certain fields, the District Judge, as shown by his opinion, 123 F.Supp. 193, did not feel free to disregard the decision of the Court of Appeals of Maryland in Durkee v. Murphy, 181 Md. 259, 29 A.2d 253, and the decision of this court in Boyer v. Garrett, 4 Cir., 183 F.2d 582.* Both of these cases are directly in point since they related to the field of public recreation and held, on the authority of Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, that segregation of the races in athletic activities in public parks or playgrounds did not violate the 14th Amendment if substantially equal

facilities and services were furnished both races.

"Our view is that the authority of these cases was swept away by the subsequent decisions of the Supreme Court. In McLaurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149, the Supreme Court had held that it was a denial of the equal protection guaranteed by the Fourteenth Amendment for a state to segregate on the ground of race a student who had been admitted to an institution of higher learning. In Henderson v. United States, 339 U.S. 816, 70 S.Ct. 843, 94 L.Ed. 1302, segregation on the ground of race in railway dining cars had been held to be an unreasonable regulation violative of the provisions of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. Subsequently, in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, segregation of white and colored children in the public schools of the state was held to be a denial of the equal protection clause of the 14th Amendment; and in Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884, segregation in the public schools of the District of Columbia was held to be violative of the due process clause of the Fifth Amendment. In these cases, the 'separate but equal' doctrine adopted in Plessy v. Ferguson (163 U.S. 537, 16 S.Ct. 1144) was held to have no place in modern public education.

"The combined effect of these decisions of the Supreme Court is to destroy the basis of the decision of the Court of Appeals of Maryland in Durkee v. Murphy and the decision of this court in Boyer v. Garrett. The Court of Appeals of Maryland based its decision in Durkee v. Murphy on the theory that the segrega-

---

10. 220 F.2d 386.

* Cited by Chief Judge Hutcheson in Beal v. Holcombe.

tion of the races in the public parks of Baltimore was within the power of the Board of Park Commissioners of the City to make rules for the preservation of order within the parks; and it was said that the separation of the races was normal treatment in Maryland and that the regulation before the court was justified as an effort on the part of the authorities to avoid any conflict which might arise from racial antipathies.

"(1, 2) . It is now obvious, however, that segregation cannot be justified as a means to preserve the public peace merely because the tangible facilities furnished to one race are equal to those furnished to the other. The Supreme Court expressed the opinion in Brown v. Board of Education of Topeka, 347 U.S. 492 to 494, 74 S.Ct. 690 to 691, that it must consider public education in the light of its full development and its present place in American life, and therefore could not turn the clock back to 1896 when Plessy v. Ferguson was written, or base its decision on the tangible factors only of a given situation, but must also take into account the psychological factors recognized at this time, including the feeling of inferiority generated in the hearts and minds of Negro children, when separated solely because of their race from those of similar age and qualification. With this in mind, it is obvious that racial segregation in recreational activities can no longer be sustained as a proper exercise of the police power of the State; for if that power cannot be invoked to sustain racial segregation in the schools, where attendance is compulsory and racial friction may be apprehended from the enforced commingling of the races, it cannot be sustained with respect to public

beach and bathhouse facilities, the use of which is entirely optional.

"The decision in Bolling v. Sharpe also throws strong light on the question before us for it admonishes us that in approaching the solution of problems of this kind we should keep in mind the ideal of equality before the law which characterizes our institutions. The court said, 347 U. S. at pages 499–500, 74 S.Ct. at page 694:

" 'Classifications based solely upon race must be scrutinized with particular care, since they are contrary to our traditions and hence constitutionally suspect. As long ago as 1896, this Court declared the principle "that the constitution of the United States, in its present form, forbids, so far as civil and political rights are concerned, discrimination by the general government, or by the states, against any citizen because of his race." And in Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149, the Court held that a statute which limited the right of a property owner to convey his property to a person of another race was, as an unreasonable discrimination, a denial of due process of law.

" 'Although the Court has not assumed to define "liberty" with any great precision, that term is not confined to mere freedom from bodily restraint. Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective. Segregation in public education is not reasonably related to any proper governmental objective, and thus it imposes on Negro children of the District of Columbia a burden that constitutes an arbitrary deprivation of their liberty in violation of the Due Process Clause.' "

384

I am of the clear opinion that Lonesome v. Maxwell is correct and sets out the current status of Plessy v. Ferguson and other cases sanctioning the principles of segregation in the field of public recreation. I think that the plaintiffs are entitled to the relief sought in this case and direct that a form of decree be presented wherein it is declared that the plaintiffs and other Negro citizens similarly situated have the right under the Constitution of the United States to the free and unrestricted use and enjoyment of Central and Tyrrell Parks in the City of Beaumont and any administrative order or policy based upon custom and usage of the defendant, City of Beaumont, Jefferson County, Texas, to the contrary is unconstitutional and void for the reason that it denies the plaintiffs and the members of the class they represent their privileges and immunities under the Constitution of the United States and denies to them the equal protection of the laws secured to them by the Constitution of the United States, and I am further convinced that a permanent injunction should be issued forever enjoining the defendants, their agents, servants, and employees, and their successors in office henceforth and forever from executing or enforcing any administrative order or policy based upon custom and usage against the plaintiffs or any members of their class because of their race and color, with reference to the public facilities subject to examination here.

All costs herein shall be taxed against the defendants.

This Memorandum Decision shall be considered as the Findings of Fact and Conclusions of Law herein as authorized by Rule 52, Fed.Rules Civ.Proc., 28 U.S.C.A.

Let counsel prepare and submit appropriate decree within seven days from date hereof.