**CITY OF MONTGOMERY, ALABAMA, et al.,**

v.

**Georgia Theresa GILMORE et al.**

**No. 18107.**

United States Court of Appeals Fifth Circuit.
April 15, 1960.

Walter Knabe, Drayton N. Hamilton, Montgomery, Ala.; A. Neil Hudgens, Calvin M. Whitesell, Horace Perry, Montgomery, Ala., of counsel, for appellants.

Solomon S. Seay, Jr., Montgomery, Ala., Robert L. Carter, New York City, for appellees.

Before RIVES, Chief Judge, and HUTCHESON and BROWN, Circuit Judges.

RIVES, Chief Judge.

On December 22, 1958, eight Negro citizens of the United States and residents of Montgomery, Alabama, filed this class action on behalf of themselves and other Negroes similarly situated against the City of Montgomery, the Board of Commissioners of said City, its Parks and Recreation Board, and the Superintendent of the Parks and Recreation Program. Their complaint alleged that the defendants own, operate, and maintain Oak Park and eleven or more other

public parks in the City "designated for use by white persons only"; that, on June 4, 1957, the Board of Commissioners adopted an ordinance requiring white and colored persons to use the parks assigned to their respective races under penalty of fine and imprisonment; that, pursuant to said ordinance, "the defendants have enforced, executed and pursued and are enforcing, executing and pursuing a policy, practice, custom and usage of denying to plaintiffs and other Negroes similarly situated admission to and the unrestricted use of Oak Park and certain other municipal parks under their supervision and control solely because of their race or color. This said policy, practice, custom and usage enforced, executed and pursued by said defendants deprive plaintiffs and other Negroes similarly situated solely because of their race or color of the rights and privileges afforded white persons in deprivation of rights secured under the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States."

Plaintiffs prayed that the ordinance as so applied be adjudged unconstitutional; that a judgment be entered declaring defendants' policy and custom of denying Negroes admission to and the use of Oak Park and any of the other public parks solely because of their race or color to be a denial to such Negroes of due process of law and the equal protection of the laws; and that the defendants be permanently enjoined "from making any distinction on account of race or color in extending and granting the right and privilege of admission to and use of Oak Park or any other public park * * *."

The plaintiffs attached as exhibits to their complaint a copy of a petition addressed to the Parks and Recreation Board, praying that Board to discontinue the policy and custom of denying to petitioners and other Negroes similarly situated admission to and use of Oak Park and other public parks, or to grant them a hearing on such requests, and a copy of the Board's answer:

"* * * that the Parks and Recreation Board is controlled by the ordinances of the city of Montgomery, and would have no authority to consider any of the matters set forth in the petition which you forwarded to this Board.

"As the Board has no authority in this matter, the Board denies the request of the petitioners for a hearing."

The plaintiffs then addressed their petition to the Board of Commissioners of the City of Montgomery. That Board in replying called attention to five "facilities which are at the present time offered exclusively to Negroes," and concluded: "The Commission will not operate integrated parks. Under the circumstances we see no need for a hearing on this matter. Your petition is therefore denied."

The defendants filed a motion to dismiss and a motion to stay, in which they relied upon a resolution adopted by the Board of Commissioners on December 30, 1958, under which all of the public parks in the City were "closed beginning January 1, 1959, to all persons, regardless of color, until further action of the Parks and Recreation Board and the Mayor and Commissioners of the City of Montgomery." Those motions of the defendants were overruled, as was a subsequent motion of the plaintiffs for summary judgment. The defendants answered the complaint and each paragraph thereof separately. In response to the paragraph heretofore quoted, in which it was charged that the defendants have enforced and pursued a policy of denying to plaintiffs and other Negroes admission to and the use of Oak Park and certain other public parks solely because of their race or color, the defendants answered simply:

"For answer to paragraph VII–C of the complaint, defendants say that Oak Park and all other municipal parks under their supervision and control have been closed since January 1, 1959, to all persons, regardless of color or race."

Rule 8(d), Federal Rules of Civil Procedure, 28 U.S.C.A., provides in part that, "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." The defendants have thus admitted the averments of the custom or policy of enforced racial segregation in the public parks of the City. There were further express admissions to that effect in the testimony, as quoted in the margin.[1]

The district court filed a thoroughly considered opinion, now reported in 176 F.Supp. at page 776, and rendered a judgment: (1) that the ordinance is un-constitutional and void; (2) that the policy, custom and usage of the defendants in denying to the plaintiff and other Negro citizens similarly situated the use of any public parks owned and operated by the City, such denial being solely on account of color or race, is unconstitutional and void; and (3) that the defendants, their successors in office, etc., be "permanently enjoined and restrained from enforcing the aforesaid ordinance, or any other ordinance or statute, or any custom, practice, policy or usage which may require plaintiffs, or any other Negroes similarly situated, to submit to enforced segregation solely because of race or color in their use of any public parks owned and operated by the City of Mont-

---

1. "The Court: All right. Can you stipulate that, prior to January 1, 1950, the City of Montgomery, through its officers, were enforcing and pursuing a policy and a practice and a custom and usage of denying negroes the right to use those parks that were designated for whites, and denying whites the right to use those parks that were designated for the negroes; is that controverted?

"Mr. Knabe: We will have to ask, Your Honor.

"The Court: Is there any question about that?

"Mr. Nachman: Your Honor, we are informed by our clients that, insofar as they know, there was never any attempt by any negroes to use these parks, so whether or not there was any occasion for the application of this Ordnance (sic), we are not—advised insofar as our clients know there was none.

"The Court: Uh, huh; I take it, then, that, insofar as your clients are concerned, they were not pursuing a practice of segregation in any of the parks; they were or they weren't, Mr. Nachman?

"Mr. Nachman: Well, the—the Ordnance (sic) was on the books, the Ordnance (sic)—

"The Court: Talking about the custom and policy and the practice now, not the Ordnance (sic).

"Mr. Nachman: Your Honor, the clients say that they would have enforced and carried out this Ordnance (sic) had there been an occasion to do so; but, as I say, they recall no occasion for the application of the Ordnance (sic) in any specific instance.

"The Court: Were there any instructions given relative to segregation or—or to keeping the whites out of the negro parks, regardless of whether there was any application of it; what was the custom and practice and policy?

"Mr. T. A. Belser: To white—the white parks white and the colored colored.

"The Court: Of course, all of us know that; why spend the time of this Court and you gentlemen and everyone else trying to prove those facts? I mean I want to take all the time that is necessary, but I don't want to spend my time on matters that all of us know existed or didn't exist. I think you can spend your time, and you can spend your time, and I can spend my time to matters that are much more fruitful and interesting."

On cross-examination, Mr. T. A. Belser, Superintendent of Parks and Recreation, testified:

"Q. It would have then been your duty, Mr. Belser, as chief administrative officer for the Board to take the necessary steps to see to it that Ordnance (sic) number 21–57 of the City of Montgomery was enforced if negroes had presented themselves to Oak Park or any of the public parks designated for negroes—for white persons only; is that not correct?

"A. That would have been a police matter, I would have called the police, yes.

"Q. You would have called the police?

"A. That is correct.

"Q. To enforce the segregation ordnance (sic) of the City of Montgomery?

"A. That is correct."

gomery, Alabama." From that judgment the defendants appeal.

■ The appellants do not contend, and cannot seriously contend, that enforced racial segregation in the public parks of a city is constitutional, for the contrary is now settled beyond legitimate debate.[2]

■ The appellants' contention that the ordinance and the policy or custom of enforced racial segregation became moot when the City closed its parks is completely answered in the opinion of the district court and in the cases there cited.[3]

■ Further reasons in support of the judgment are contained in the opinion of the district court, with which we agree. The judgment should therefore be affirmed. We think, however, that the judgment should also be modified so as to provide that the district court will retain jurisdiction of the cause for such reasonably long period as may appear to it advisable, with the right and authority to enter such further orders and decrees as may hereafter appear meet and proper, including, in the sound discretion of the district court, a decree vacating the injunction in the event it should appear that the defendants may be able to plan and act more effectively so as to reopen and operate the parks within the framework of the Constitution if they are freed from the restraining effects of the injunction. We state briefly some of the reasons for this modification of the judgment.

The public parks of the City of Montgomery have been completely closed to peoples of all races since January 1, 1959—for more than a year now—and there is no indication as to when, if ever, they will be reopened. For the residents of Montgomery to be deprived of public park and recreational facilities even for a year is a serious inconvenience. For that condition to continue until the parks are subdivided or converted to other uses is bound to result in injury to the health and welfare, to the social well-being, and even to the industrial life of the City. Only the most compelling of reasons can prevent persons of good will, regardless of race, from uniting their efforts to avert that result.

■ We agree with the district court that no law, State or Federal, requires the City to operate public parks.[4] Clos-

2. Holmes v. City of Atlanta, D.C.N.D.Ga. 1954, 124 F.Supp. 290, affirmed 5 Cir., 1955, 223 F.2d 93, reversed 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776; Dawson v. Mayor and City Council of Baltimore City, 4 Cir., 1955, 220 F.2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133, 100 L. Ed. 774; Department of Conservation & Development, Division of Parks, Com. of Va. v. Tate, 4 Cir., 1956, 231 F.2d 615, affirmed 352 U.S. 838, 77 S.Ct. 58, 1 L. Ed.2d 56; Fayson v. Beard, D.C.E.D. Tex.1955, 134 F.Supp. 379; City of St. Petersburg v. Alsup, 5 Cir., 1956, 238 F.2d 830; Holley v. City of Portsmouth, Va., D.C.E.D.Va.1957, 150 F.Supp. 6; Ward v. City of Miami, Fla., D.C.S.D.Fla. 1957, 151 F.Supp. 593; Moorhead v. City of Fort Lauderdale, D.C.S.D.Fla.1957, 152 F.Supp. 131, affirmed 5 Cir., 1957, 248 F.2d 544; Simkins v. City of Greensboro, D.C.M.D.N.C.1957, 149 F.Supp. 562, affirmed 4 Cir., 1957, 246 F.2d 425; Dawley v. City of Norfolk, Va., D.C.E.D.Va. 1958, 159 F.Supp. 642.

3. United States v. Hamburg-Amerikanische Packet-Fahrt-Actien Gesellschaft, 1916,

239 U.S. 466, 36 S.Ct. 212, 60 L.Ed. 387; United States v. W. T. Grant Co., 1953, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303, and cases cited therein; Walling v. Helmerich & Payne, 1944, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; Boggess v. Berry Corporation, 9 Cir., 1956, 16 Alaska 256, 233 F.2d 389; Lawrence v. Hancock, D.C. S.D.W.Va.1948, 76 F.Supp. 1004; and Tate v. Department of Conservation and Development, D.C.E.D.Va.1955, affirmed 231 F.2d 615, certiorari denied 352 U.S. 838, 77 S.Ct. 58, 1 L.Ed.2d 56. See also, Avery v. Wichita Independent School Dist., 5 Cir., 1957, 241 F.2d 230, certiorari denied 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 761.

4. In our opinion, the closing of all of the public parks of the City does not violate the equal protection of the laws of the citizens of Montgomery under the doctrine of James v. Almond, D.C.E.D.Va. 1959, 170 F.Supp. 331; James v. Duckworth, D.C.E.D.Va.1959. 170 F.Supp. 342, and Harrison v. Day, 1959, 200 Va. 439. 106 S.E.2d 636.

ing the parks does relieve, at least temporarily, any discrimination against the plaintiffs and other Negroes. That is, however, a Pyrrhic victory indeed, for it comes at the expense of depriving all persons in the City of public park and recreational facilities.

▮ In its resolution closing the parks, the Board of Commissioners referred to "grave problems involving the welfare and public safety of the citizens of the City of Montgomery," and stated that, "the members of the Commission are of the opinion that it is to the best interests of the citizens of Montgomery that said parks be closed." That is a matter committed to the wisdom of the members of the Board of Commissioners, and is not subject to review by this Court in the absence of some violation of the Constitution of the United States.

Unfortunately, the public parks of the City of Montgomery are comparatively small in size. The largest, Oak Park, consists of about 40 acres in the form of a square. If public parks no larger than that are operated on a nonsegregated basis, the probable breach of another right becomes imminent; that is, the right of each person to select his own associates.[5] If the attempted operation of such small public parks on a nonsegregated basis, without any advance planning, should result in the full use of all of the parks by Negroes and their non-use by whites, then it cannot reasonably be anticipated that the City will continue to operate and maintain any parks. Without wise advance planning, and considerable self-discipline and forbearance on the part of citizens of all

races, it may be inevitable that the City of Montgomery for a long time in the future will be totally deprived of parks and recreational facilities.

▮ It is not the function of the Court to suggest possible steps to avert that result. We can only call attention to the limit of the pertinent constitutional provision as construed by the Supreme Court, i.e., that it does not compel the mixing of the different races in the public parks. As was said in Cohen v. Public Housing Administration, 5 Cir., 1958 257 F.2d 73, 78:

"Neither the Fifth nor the Fourteenth Amendment operates positively to command integration of the races but only negatively to forbid governmentally enforced segregation." [6]

That case also gave expression to the obvious but important truism that there is certainly no law to prevent cooperation between peoples of all races.

The Supreme Court has recognized the difficulties faced by State and local authorities in a transition of public facilities to a racially nondiscriminatory system, and has directed that:

"In fashioning and effectuating the decrees, the courts will be guided by equitable principles. Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs. These cases call for the exercise of these traditional attributes of equity power."

Brown v. Board of Education, 1955, 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed.

---

5. As was said in the Montgomery City Bus Case,

"In their private affairs, in the conduct of their private businesses, it is clear that the people themselves have the liberty to select their own associates and the persons with whom they will do business, unimpaired by the Fourteenth Amendment. The Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835. Indeed, we think that such liberty is guaranteed by the due process clause of that Amendment.

"There is, however, a difference, a constitutional difference, between voluntary adherence to custom and the perpetuation and enforcement of that custom by law. Shelley v. Kraemer, 334 U.S. 1, 13, 68 S. Ct. 836, 92 L.Ed. 1161." Browder v. Gayle, D.C.M.D.Ala.1956, 142 F.Supp. 707, 715.

6. See, also, Avery v. Wichita Falls Independent School District, 5 Cir., 1957, 241 F.2d 230, 233; Rippy v. Borders, 5 Cir., 1957, 250 F.2d 690, 692.

1083. See, also, Cooper v. Aaron, 1958, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19.

In many different contexts the Supreme Court has directed the adoption of procedure "aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system. To minimize the possibility of such interference a 'scrupulous regard for the rightful independence of state governments * * * should at all times actuate the federal courts,' Matthews v. Rodgers, 284 U.S. 521, 525, [52 S.Ct. 217, 219, 76 L.Ed. 447] as their 'contribution * * * in furthering the harmonious relation between state and federal authority * * *.' Railroad Comm'n v. Pullman Co., 312 U.S. 496, 501 [61 S.Ct. 643, 645, 85 L.Ed. 971]" Harrison v. N.A.A.C.P., 1959, 360 U.S. 167, 176, 79 S.Ct. 1025, 1030, 3 L.Ed. 2d 1152. See, also, Martin v. Creasy, 1959, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed. 2d 1186; Allegheny County v. Frank Mashuda Co., 1959, 360 U.S. 185, 79 S. Ct. 1060, 3 L.Ed.2d 1163; Louisiana Power & Light Co. v. City of Thibodaux, 1959, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed. 2d 1058. In the cases just cited, the Supreme Court considered the so-called "abstention doctrine" under which a federal court in a proper case may abstain from the exercise of its jurisdiction in order to permit issues to be resolved by a State court. The doctrine is all the more applicable when the issues may possibly be resolved by state or local administrative action.

There is ordinarily no absolute right to injunction. So long as the constitutional rights of the plaintiffs and of persons similarly situated are not being violated the continuance in force of the injunction or its vacation rests in the sound discretion of the court to be exercised in accordance with well settled equitable principles. 28 Am.Jur., Injunctions, Section 35 and authorities there collected. The judgment is therefore so

Modified and affirmed.