Georgia Theresa GILMORE, Gussie Carlton, Sylvia Johnson, J. C. Smith, Mattie Cargill, Fred Harris, George Stephens, Elizabeth Brown, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CITY OF MONTGOMERY, Alabama, a Municipal Corporation; Board of Commissioners of the City of Montgomery; W. A. Gayle, Frank W. Parks and Clyde C. Sellers, as Members of the Board of Commissioners of the City of Montgomery; Park and Recreation Board of the City of Montgomery; Mrs. James Fitts Hill, Father M. J. Rafferty, Rev. Louis Armstrong, Florian Strassburger, and Jack Hope, as Members of the Park and Recreation Board; T. A. Belser, as Superintendent of the Parks and Recreational Program for the City of Montgomery, Alabama, Defendants.

Civ. A. No. 1490–N.

United States District Court
M. D. Alabama, N. D.

Sept. 9, 1959.

Solomon S. Seay, Jr., Montgomery, Ala., for plaintiffs.

Walter J. Knabe, Montgomery, Ala., for defendants.

JOHNSON, District Judge.

This is an action commenced by the above-named plaintiffs on behalf of themselves as Negro citizens of the City of Montgomery, Alabama, and other Negro citizens similarly situated, seeking a judgment declaring that Ordinance No. 21–57 of the City of Montgomery, Alabama and the policy of the above-named defendants, their practice, custom, and usage of denying to these Negro plaintiffs and the members of the class they represent permission to use the several public parks owned, operated, supervised, and maintained by the City of Montgomery, Alabama, while at the same time extending and granting to white persons the right, privilege, and admission to and use of these public parks, deprive these persons and members of their class of their constitutional rights as secured by the Fourteenth Amendment to the Constitution of the United States. Plaintiffs also seek an injunction prohibiting the operation of said public parks on a basis that requires segregation solely because of race or color.

This action is now submitted to the Court upon the pleadings and the exhibits thereto, the stipulations entered into by and between the parties and dictated into the record, the oral testimony taken before the Court, and the briefs and arguments of the parties. Upon this submission, this Court now proceeds in this memorandum opinion to make the appropriate findings of fact and conclusions of law.

Each of the plaintiffs is a Negro citizen of the City of Montgomery, Alabama, and each is a citizen of the United States. Each of the plaintiffs has for a considerable number of years lived in the City of Montgomery, Alabama, and has had available for use and has used only the recreational parks designated for the use of Negro citizens. They have not used nor had available for their use those parks designated for use by the City of Montgomery for white people only, except in their capacity as maids and/or servants. Each of the plaintiffs desires to use and would find it convenient to use one or more of the recreational parks set aside by the City of Montgomery for the use of white persons only. In several instances, the parks designated for use by whites are more readily accessible to plaintiffs than those parks designated for the use of the Negroes.

The City of Montgomery owns, maintains, and until January 1, 1959, operated Bear Park, Bruce Field Park, Civic Park,

Day Street Park, Diffly Park, Hamner Hall Park, Kings Hill Park, Kiwanis Park, Mobile Heights Park, Oak Park, Perry Street Park, Ridgecrest Park, Washington Park, and Trenholm Court Park. Of these parks, Washington Park, Kings Hill Park, Trenholm Court Park, and Mobile Heights Park were designated by the City of Montgomery, acting through its officials, exclusively for the use of Negro citizens. All the other named parks were designated exclusively for the use of white citizens.

The City of Montgomery, at the time plaintiffs filed their suit and since June 4, 1957, had as one of its ordinances the ordinance designated in this case as Ordinance No. 21–57.[1] This ordinance makes it a misdemeanor, subject to fine and imprisonment, for any person, white or colored, to enter upon, visit, use, or in any way occupy public parks, or other public houses or public places except those assigned to their respective races.

The plaintiffs filed their complaint on December 22, 1958, after having petitioned the Park and Recreation Board for the City of Montgomery to discon-tinue the policy, practice, custom, and usage of denying to Negro citizens admission to and the use of any of the public parks owned, operated, supervised, and maintained by the City of Montgomery. This petition was acknowledged by the chairman of the Park and Recreation Board on August 25, 1958, by referring petitioners to the "ordinances of the City of Montgomery." Subsequent to that time, petitioners, together with other members of their race, requested the Board of Commissioners of the City of Montgomery, Alabama, to permit them the use of any of the public parks owned, operated, and maintained by the City of Montgomery. That request was acknowledged by the City Commissioners on September 17, 1958, the Commissioners then stating, "The Commission will not operate integrated parks."

After plaintiffs filed this action and effective January 1, 1959, all the above-named public parks in Montgomery, Alabama, were by resolution of the City Commissioners closed to all members of the public, both white and Negro. This action was effective January 1, 1959, and has continued to this date.[2] The City of

---

1. "An Ordinance No. 21–57. Be It Ordained By The Board Of Commissioners Of The City Of Montgomery, as follows:

 "Section 1. It shall be unlawful for white and colored persons to enter upon, visit, use or in any way occupy public parks or other public houses or public places, swimming pools, wading pools, beaches, lakes or ponds except those assigned to their respective races.

 "Section 2. It shall be unlawful for any person, who, being the owner, proprietor, keeper or superintendent of any public park or other public houses or public places, swimming pool, beach, lake or pond to allow or knowingly permit white and colored persons to enter upon, visit, use or in any way occupy a public park or other public houses or public places, swimming pool, wading pool, beach, lake or pond, except those assigned to their respective races.

 "Section 3. The words 'colored persons,' as used herein, shall have the same meaning as 'person of color' as defined in Section 2 of Title 1 of the 1940 Code of Alabama.

 "Section 4. Any person, firm, corporation or association violating any of the provisions of this ordinance shall be guilty of a misdemeanor against the City of Montgomery, and upon conviction shall be subject to a fine of not more than One Hundred Dollars, and imprisonment for not more than six months, one or both at the discretion of the City Recorder.

 "Section 5. The provisions of this ordinance are severable, and should any sentence, paragraph, section or clause of this ordinance be declared unconstitutional by any Court of competent jurisdiction, then such action by said Court shall not affect the other provisions of this ordinance which are otherwise constitutional.

 "Section 6. Public Health and Public Welfare demanding it, this ordinance shall take effect immediately upon its passage."

2. The pertinent portions of that resolution are:

 "Whereas, eight negroes, namely, Georgia Theresa Gilmore, Gussie Carlton, Sylvia Johnson, J. C. Smith, Mattie Cargill, Fred Harris, George Stephens, and Elizabeth Brown, have attempted to compel the integration of Oak Park and other

Montgomery, Alabama, continues to own and maintain each of the above-named parks, even though they are closed, and continues to keep on its payroll certain of the parks' officials and employees, including the Superintendent of Parks and Recreation, who, according to the testimony, is the Chief Administrative Officer for the Park and Recreation Board, and who testified that he had been furnished by the City Commission with a copy of the ordinance in question, and who further testified there was no "present intention to reopen the parks during the present term of the incumbent Commissioners", and who further testified that in the event Negroes had presented themselves for admission to those public parks designated for use by white only prior to the time the parks closed that he would have called the police and would have enforced the ordinance to the best of his ability.

This Court further finds that the City of Montgomery, Alabama, even though it closed all parks to all persons irrespective of race or color, has not repealed Ordinance No. 21–57; the City of Montgomery, as sole owner and in sole control of said parks that are now being maintained and kept up, is free to reopen any or all of the parks at any time it sees fit, and, as a matter of fact, the closing of the parks was "pending further action of the Parks and Recreation Board and the Mayor and Commissioners of the City of Montgomery."

The evidence in this case reflects only one instance of a Negro being arrested for trespassing upon a park area that was designated for use by the whites. However, it is clear from all the testimony and the exhibits that the City of Mont-

gomery, Alabama, acting through its City Commissioners and its Park and Recreation Board, had adopted and was enforcing during the time these parks were operated and on up until they were closed on January 1, 1959, a policy, practice, custom, and usage of enforced segregation in these parks.

This Court concludes that it has jurisdiction of this matter and that this action is properly brought by these plaintiffs as a class action. See Frasier v. Board of Trustees of University of North Carolina, D.C., 134 F.Supp. 589, affirmed 350 U.S. 979, 76 S.Ct. 467, 100 L.Ed. 848. This Court further concludes that Ordinance No. 21–57, adopted by the City of Montgomery, acting through its Board of Commissioners on June 4, 1957, which ordinance makes it a misdemeanor for white and colored persons to enter upon, visit, or use, or in any way occupy public parks except those assigned to their respective races, is unconstitutional. See Holmes v. City of Atlanta, D.C., 124 F.Supp. 290, 5 Cir., 223 F.2d 93, and 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776. Also see Moorhead v. City of Ft. Lauderdale, D.C., 152 F.Supp. 131, 5 Cir., 248 F.2d 544; Ward v. City of Miami, D.C., 151 F.Supp. 593; City of St. Petersburg v. Alsup, 5 Cir., 238 F.2d 830, and Tate v. Department of Conservation and Development, etc., D.C., 133 F.Supp. 53, 4 Cir., 231 F.2d 615, and 352 U.S. 838, 77 S.Ct. 58, 1 L.Ed.2d 56.

This Court further concludes that the policy, practice, custom and usage of denying to these Negro plaintiffs and members of the class they represent the right and privilege of admission to and use of any of the public parks owned, operated, supervised, and maintained by

public parks in the City of Montgomery hereinafter designated, by suit filed in the Federal District Court; and

"Whereas, this attempt poses grave problems involving the welfare and public safety of all of the citizens of the City of Montgomery; and

"Whereas, the members of the Commission are of the opinion that it is to the best interest of the citizens of Montgomery that said parks be closed:

"Now, Therefore, Be It Resolved by the Board of Commissioners of the City of Montgomery, Alabama, that the following public parks in the City of Montgomery, to-wit, * * * be closed beginning January 1, 1959, to all persons, regardless of color, until further action of the Parks and Recreation Board and the Mayor and Commissioners of the City of Montgomery."

the City of Montgomery is a denial of these plaintiffs and members of the class they represent the equal protection of the laws as secured to them by the Fourteenth Amendment to the Constitution of the United States and such practice, policy, custom and usage is, therefore, unconstitutional.

 This Court further concludes that since the defendants continue to maintain the unconstitutional ordinance and until after this litigation was filed continued to follow the unconstitutional custom, practice and usage with respect to the use of the parks by all races, and since the City of Montgomery continues to own and maintain these parks and is free to resume this unconstitutional practice and custom and to resume the enforcement of the unconstitutional ordinance, the plaintiffs are entitled not only to the declaratory relief they ask for but also to the injunctive relief they herein seek; [3] this is true even though the parks are closed at the present time. As a matter of fact, it is only reasonable to assume from all the testimony (or lack of it) that unless this Court grants to these plaintiffs the relief they now seek, the parks will again be reopened and operated upon the same basis as before. See United States v. Hamburg-American S.

Co., 239 U.S. 466, 36 S.Ct. 212, 60 L. Ed. 387; United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303, and cases cited therein; Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; Boggess v. Berry Corporation, 9 Cir., 233 F.2d 389; Lawrence v. Hancock, D.C., 76 F.Supp. 1004; and Tate v. Department of Conservation and Development, supra. See also Avery v. Wichita Falls Independent School District, 5 Cir., 241 F.2d 230, certiorari denied 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 761.

It should now be made clear that all this Court now holds is simply that insofar as is legally required the City of Montgomery, Alabama, need not operate any public parks or make available to its citizens any recreational facilities; all public parks and all recreational facilities may remain closed for as long as the City—acting through its elected officials and agents—sees fit to keep them closed. However, when and if the parks are reopened as public parks each must be available for the benefit of all the public regardless of race or color upon a nondiscriminatory basis.

A formal judgment and formal writ of injunction will issue in accordance with the foregoing.

3. The only testimony defendants offer with respect to the possibility of the parks being reopened on an unconstitutional basis is that they have "no present intention to reopen any of the parks during the present term of the incumbent Commissioners." The term of the "incumbent Commissioners" expires on October 5, 1959. One of the new Commissioners, the only incumbent being returned to office, was present during the taking of the testimony in this cause and at the counsel table. In response to an inquiry from the Court, after the close of the testimony by both sides and an expressed desire on the part of the Court for some testimony concerning the future intentions of the City of Montgomery in this respect, the Court was informed by this City Commissioner that that bridge would have to be crossed when they got to it.