**F. L. SHUTTLESWORTH et al.,**
**Plaintiffs,**

**v.**

**Dan GAYLORD et al., Defendants.**

**Civ. A. No. 9505.**

United States District Court
N. D. Alabama, S. D.

Nov. 8, 1961.

Ernest D. Jackson, Sr., Jacksonville, Fla., W. L. Williams, Jr., Birmingham, Ala., for plaintiffs.

J. M. Breckenridge, City Atty., Birmingham, Ala., for defendants.

### Findings of Fact and Conclusions of Law

GROOMS, District Judge.

This matter came on for hearing on the merits on October 24, 1961. All parties were represented by counsel. Upon motion duly made, Raiford Ellis and King Sparks, Jr., were stricken as party defendants upon the grounds that both defendants were no longer employed in any capacity by the City of Birmingham or in the capacity as alleged in the complaint. The Court also granted plaintiffs' motion to substitute Frank A. Wagner as a party defendant in place of King Sparks, Jr., the said Frank A. Wagner being the present acting superintendent of the Park and Recreation Board of the City of Birmingham. The defendant, Frank A. Wagner, was permitted to file an answer adopting all prior answers filed on behalf of King Sparks, Jr., up to the present date.

Pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C., plaintiffs are permitted to amend their complaint to conform to the evidence introduced at the trial. Plaintiffs, without objection by the defendants, had taken the testimony of managerial officers of both the Museum of Art and the Municipal Auditorium of the City of Birmingham prior to trial as well as during trial of this matter on its merits. Both parties by their action implied that they considered the Museum of Art and the Municipal Auditorium as recreational facilities falling within the compass of the language of the prayers of the complaint: "Plaintiffs pray that this Court will * * enjoin the defendants * * * from continuing to enforce any policy, custom, usage, regulation or ordinance requiring racial segregation *in any public recreational facilities owned and operated by the City of Birmingham or owned and leased by the City of Birmingham to private persons, corporations or associations * * *.*"

On the other hand, this Court sustained the defendants' objection to the introduction of evidence relative to the Public Library System of the City of Birmingham upon the grounds that plaintiffs had not specifically named the System as one of the recreational facilities being complained about and upon the grounds that a library may or may not be generally known or accepted as a recreational facility. Prior to trial and the subpoenaing of officers of the public libraries to testify at the trial, the plaintiffs had not mentioned specifically the Public Library System or done any act that would have put the defendants on notice to prepare a defense if they desired. This ruling of the Court, however, does not in any way prohibit plaintiffs from taking additional legal steps to bring the Public Library System of Birmingham before this Court and have their rights to use said libraries on a nonracial segregated basis determined, provided that the facilities are then being used on a segregated basis.

### Findings of Fact

The Court finds that:

1. The plaintiffs, fifteen in number, are members of the Negro race, citizens of the United States and of the State of Alabama, and are suing individually and on behalf of all colored citizens of the City of Birmingham, similarly situated.

2. The named defendants are the duly appointed and acting members of the Park and Recreation Board of the City of Birmingham, the Acting Superintendent of the Park and Recreation Board

of the City of Birmingham, the Mayor-Commissioner, and the two Associate Commissioners of the City of Birmingham; the unnamed defendants are all subordinate officers, employees, agents, licensees, concessionaires, and lessees (except as herein limited) of the City of Birmingham. The City of Birmingham is a municipal corporation, organized under the laws of the State of Alabama. The Mayor-Commissioner and the two Associate Commissioners compose the governing administrative and legislative body of the City of Birmingham. The Park and Recreation Board members have direct authority over all public parks and public recreational facilities except the Museum of Art and the City Auditorium. The Museum of Art is under the control of the City Commissioners and managed by a board created by the City Commissioners, said Board being subject to the control of the Commission as provided by City Ordinance No. 783 (as amended by Ordinance No. 1476–F). The City Auditorium is under the control of the City Commission and managed by a manager employed by the City Commission.

3. All of the facilities involved herein are either owned and operated or owned and leased by the City of Birmingham, and each of them is either located within the boundaries or closely adjacent to the boundaries of the City of Birmingham, and as such are intended to be covered by the permanent injunction to be entered. The Public Library System is expressly excluded at this time from the injunction to be entered. These public facilities include, but are not limited to, the following: Public Parks, playgrounds, tennis courts, swimming pools, the Municipal owned zoo, and all leased areas located on the zoo grounds, golf courses, pitch and putt golf courses, ball parks, Legion Field, the Birmingham Museum of Art and the Municipal Auditorium of the City of Birmingham.

4. The evidence introduced at the trial consisted of city ordinances requiring the separation of races in play as well as in the use of public recreational facilities and imposes criminal penalties upon both the participants and the owner or supervisor of the facilities involved. There was testimony from the petitioners and other citizens as well as from officers, employees, and lessees of the City of Birmingham, to the effect that some of the facilities over a period of years, to wit, fifteen or more years, were used almost exclusively, if not exclusively, by colored citizens or white citizens. The separation of races in the use of parks, swimming pools, tennis courts, golf courses and all the attending facilities located on these parks and playgrounds was so apparent that each of the supervisors of the Park and Recreation Board could identify each park on the basis of race.

■ Some of the facilities involved were used jointly by members of both races; however, the evidence showed that the races were either seated in segregated areas, or permitted to use the facilities at separate times. Posted signs were used to designate separate drinking fountains, restroom facilities and windows for service or entrances. The zoo director testified that colored citizens were segregated and discriminated against in the use of picnic areas at the zoo. Colored citizens are denied permits to use certain picnic areas and none were given permits to use sheltered areas. The Court finds that the maintenance of such signs is itself discriminatory, whether applied to separate entrances, restrooms, drinking fountains, or any other facilities provided for public use.

■ The defendants argue and urge that the separation of the races in the use of these facilities was voluntary and was by custom because the defendants did not enforce adherence to the signs or the City ordinances requiring the separation of races in the use of these facilities. However, the evidence revealed that at no time did the defendants take a single step by public notice or otherwise to inform the residents of the City of Birmingham that they could disregard these signs and the ordinances of the City demanding the separation of races. This was true even though the plaintiffs

specifically requested the defendants by petition to clarify their position in connection with the use of these public facilities. That in absence of any evidence to the contrary it may be reasonably assumed that the conduct of the plaintiff, if not in whole at least in part, was responsive to the signs and City ordinances requiring the segregation of races and imposing criminal punishment for failure to obey. The Court, therefore, finds that City Ordinance No. 597 (as amended) and City Ordinance No. 859 are discriminatory. The Court further finds that the defendants are, in fact, operating or permitting their lessees, employees, or agents to operate the public facilities involved herein on a discriminatory and segregated basis.

5. The Court finds that unless enjoined, the defendants will continue the practices and custom of discrimination against Negroes and other colored persons with respect to the use of public recreational facilities owned and operated or owned and leased by the City of Birmingham.

### Conclusions of Law

1. This Court has jurisdiction of this cause and the parties thereto.

Jurisdiction is properly invoked under Title 28, United States Code, § 1343, Title 42, United States Code Annotated § 1983, Title 28, United States Code, §§ 2201–2202, Title 28, United States Code, § 1331, and the Fourteenth Amendment to the Constitution of the United States. The suit is properly brought as a class action under Rule 23(a) (1), Federal Rules of Civil Procedure.

2. Though so referred to in public discussion, this action is not one to compel integration of the public facilities herein involved. The law does not compel integration, whatever the guise under which relief is sought. It only prohibits governmentally enforced segregation.[1]

3. Discrimination in the use and enjoyment of public recreational facilities of any kind or nature owned and operated or owned and leased by the City, whether under color of law, statute, ordinance, policy, custom or usage, is violative of the Equal Protection of the Laws clause of the Fourteenth Amendment to the Constitution of the United States. So long as any such facilities are open to use by the public, the only lawful and constitutional use thereof is on an equal basis, without discrimination in any form on account of color or race.[2]

1. City of Montgomery v. Gilmore, 5 Cir., 277 F.2d 364; Cohen v. Public Housing Administration, 5 Cir., 257 F.2d 73; Barnes v. City of Gadsden, 174 F.Supp. 64 (N.D.Ala.)

2. See: City of Montgomery v. Gilmore, 5 Cir., 277 F.2d 304, affirming the trial court, D.C., 176 F.Supp. 776, holding that the enforcement of racial segregation in Montgomery, Alabama city parks was unconstitutional; Holmes v. City of Atlanta, D.C., 124 F.Supp. 290, affirmed 5 Cir., 223 F.2d 93 (Reversed by Supreme Court for inadequacy of relief granted), holding that city officials of City of Atlanta acted unconstitutionally in denying Negroes use of the city golf courses on the same basis as white people; Dawson v. Mayor & City Council of Baltimore, 4 Cir., 220 F.2d 386; affirmed by Supreme Court, 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774 reversing the trial court, D.C., 123 F.Supp. 193, in refusing to enjoin segregation of the Negro and white races at public bathing beaches, bathhouses, and swimming pools; Department of Conservation & Development v. Tate et al., 4 Cir., 231 F.2d 615, affirming, D.C., 133 F.Supp. 53, holding that the State of Virginia could not operate its state parks on a racially discriminatory basis (the Supreme Court refused review, 352 U.S. 838, 77 S.Ct. 58, 1 L.Ed.2d 56); City of St. Petersburg v. Alsup, et al., 5 Cir., 238 F.2d 830, holding that the City of St. Petersburg could not operate its municipal beach and swimming pool on a segregated basis; Fayson et al. v. Beard et al., E.D.Tex., 134 F.Supp. 379, decreeing that Negroes of City of Beaumont, Texas, were entitled to the free, unconditional, and unrestricted use and enjoyment of city parks; Holley et al. v. City of Portsmouth, E.D.Va., 150 F. Supp. 6, adjudging that the separate but equal doctrine no longer existed respecting governmental facilities, including golf courses, swimming pools, bathing beaches, parks, etc.; Ward et al.,

The Supreme Court has the last say on the matter herein presented. It has spoken, so has the Court of Appeals for this Circuit. This Court is chained by the array of authorities cited in Footnote 2 and apart from whatever personal opinion it may entertain, it must of necessity bow to the same.

4. The decided cases (cited herein) further make clear that segregated operation of recreational facilities may not be justified as falling within the ambit of proprietary as distinguished from governmental functions of the City government. It is also clear that such segregated operation may not be justified as a means to preserve public peace, and is not a proper exercise of police power.[3]

5. In order to make clear the scope of this Court's judgment and permanent injunction to be issued, it is hereby pointed out that the City of Birmingham is not required to furnish recreational facilities for the people of Birmingham.[4] What is required is that any facility owned and operated by the City, or owned and leased [5] by the City, must be open equally and on an identical basis to all members of the public, devoid of discrimination in any form upon the basis of race or color. The defendants are not enjoined from making a one event short term lease to a lessee who is sponsoring a wholly private meeting for its membership and their immediate friends. This injunction, however, will prohibit the leasing of public recreational facilities to a lessee to sponsor an event open to the public and permit said lessee to discriminate on the basis of race in the use of the facility or segregate in any manner on the basis of race those in attendance to such an event. Simulated invitational events will be considered as falling within the scope of the injunction issued in this cause.

It is shown from the evidence that the defendants have leased certain of its properties to lessees to operate recreational facilities or business in connection with the recreational facilities owned by the City of Birmingham. Some of these leases are for periods extending from approximately six months to several years. Some of these lessees appeared in court as witnesses but were not made party defendants. The lessees made known to the Court are the Birmingham Zoo Railroad, Inc., operator of the miniature railroad at Lane Park; Bertis Franklin Carroll, operator of a pitch and putt golf course; James H. Ball, operator of a food concession at Lane Park; and the Alabama State Fair Authority, operator of the fairgrounds and "Kiddie Land." There may be other lessees operating businesses in connection with public recreational facilities owned by the City of Birmingham.

As heretofore indicated, the City cannot maintain discriminatory segregated facilities by the mere leasing of such facilities. See Footnote 5. An examination of the lease of each of the lessees reveals that each lessee agreed to either obey all rules and regulations or to obey the ordinances of the City of Birmingham, and it may be assumed that each lessee agreed to obey all laws affecting the City of Birmingham. Each of the named lessees herein either appeared per-

---

v. City of Miami et al., S.D.Fla., 151 F.Supp. 593, holding action of City of Miami restricting the use of its golf facilities to Negro residents to one day each week was unlawful; Moorhead v. City of Ft. Lauderdale, S.D.Fla., 152 F. Supp. 131, affirmed by Fifth Circuit, 248 F.2d 544, prohibiting the use of the city owned and operated golf course on a racially discriminatory basis; and City of Greensboro v. Simkins, 4 Cir., 246 F. 2d 425, affirming 149 F.Supp. 562 (M.D. N.C.) holding that the City of Greensboro could not discriminate in use of its

golf course, nor avoid giving equal treatment to Negroes by leasing the course.

3. Dawson v. Mayor, etc., of Baltimore, supra.

4. City of Montgomery v. Gilmore et al., supra.

5. Department of Conservation v. Tate et al., supra; Muir v. Louisville Park & Theatrical Assn., 347 U.S. 971, 74 S.Ct. 783, 98 L.Ed. 1112, reversing 6 Cir., 202 F.2d 275; Lawrence v. Hancock, S.D. W.Va., 76 F.Supp. 1004; Simkins v. City of Greensboro, supra.

64

sonally or by one of their officials as a witness in the case and gave testimony to the effect that Negroes were either segregated or discriminated against in the use of his business which was operated on leased property owned by the City of Birmingham.

■ The Court, having jurisdiction of the named defendants, has the authority to declare plaintiffs' rights in connection with the use of the recreational facilities owned by the City, and the Court, under the evidence and the applicable law, is compelled to enjoin the defendants from permitting and continuing to permit the operation of such facilities in such a way as to discriminate against these plaintiffs and other colored people in the use of the facilities, whether operated by the City directly or by lessees. However, since the lessees are entitled to be heard, the Court is of the opinion that the injunction as to the named lessees and as to the property directly under lease should be withheld until the named lessees, and other lessees of the City of Birmingham who have leases outstanding running for a period of more than three months from the filing of this order, should be granted a period of 60 days from such filing to file a petition to intervene and given an opportunity to show why they should not be compelled to comply with the permanent injunction issued by this Court. A copy of this order will be served upon each lessee of the City affected by same by the defendants within 20 days from the filing hereof, or, in lieu thereof, the defendants will within 5 days furnish the plaintiffs the name of each lessee, and plaintiffs will within 20 days serve such copies on the lessees.

■ For the reasons stated, and to insure enforcement and flexibility of application, jurisdiction should be reserved by the Court. Further, the Court is acutely conscious of the possible difficulties the local authorities may have in changing certain facilities to a nondiscriminatory practice, and just as the Supreme Court, in the school cases,[6] submitted this matter to the broad equity discretion of the District Courts, and as was decreed by the Fifth Circuit,[7] the Court is retaining jurisdiction to assist good faith efforts to make an orderly transition to racially nondiscriminatory operation of these recreational facilities.

■ A declaratory judgment will be entered herein setting out the rights of the plaintiffs and other colored persons similarly situated as to their nondiscriminatory use and enjoyment of all City owned and operated or City owned and leased recreational facilities and embodying a permanent injunction restraining, except as herein limited, the defendants, their successors in office, their agents, servants, employees, lessees, licensees and concessionaires from denying to the plaintiffs and other colored persons of their class, the rights such declaratory judgment establishes on their behalf. City Ordinance designated as Section 597, providing that Negroes and white persons are not to play together, and City Ordinance designated as Section 859, providing for separation of races are unconstitutional and should be so declared, one of which (Section 597) has already been declared unconstitutional.

The Court recognizes that the injunction to be entered herein affects numerous and widespread facilities and the defendants are entitled to a reasonable time to take whatever steps they may decide to handle the situation; therefore, the permanent injunction to be entered herein will not be made effective until the 15th day of January, 1962, which will be —— days after its entry.

6. Brown v. Board of Education, etc., 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5.

7. City of Montgomery v. Gilmore, supra.