Robert L. COBB, a Minor, By and Through His Next Friend, George Cobb, Individually and on behalf of all others similarly situated, Plaintiff,

v.

MONTGOMERY LIBRARY BOARD, Hon. Earl D. James, Hon. L. B. Sullivan, Hon. Frank W. Parks, Individually and as Members Ex-Officio, Montgomery Library Board, and Montgomery Museum Board, W. E. Goodwin, Individually and as Chairman of the Montgomery Library Board, and Ferris J. Martin, Jr., Individually and as Library-Director of the Montgomery Public Library, Montgomery Museum Board, and Donald A. Winer, Individually and as Director of the Montgomery Museum Board, and the successors in each such office of the Montgomery Library Board and of the Montgomery Museum Board, Defendants.

Civ. A. No. 1807–N.

United States District Court
M. D. Alabama, N. D.
Aug. 7, 1962.

Charles S. Conley, Montgomery, Ala., for plaintiff.

Whitesell & DeMent, Montgomery, Ala., for defendants.

JOHNSON, District Judge.

The plaintiff, as authorized by Rule 23(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., brings this action for the benefit of himself and other members of his class that are similarly situated. The plaintiff seeks to have this Court declare that any statute, ordinance, custom or usage which provides for or enforces segregation of members of the Negro race in the public library system and the public museum of the City of Montgomery, Alabama, is null, void and violative of the Constitution of the United States. The plaintiff further seeks a preliminary order restraining and enjoining the defendants, their agents, or those acting in concert with them, from making and/or enforcing any distinction based upon race or color in regard to the use of services and facilities of any branch of the Montgomery Public Library and the Montgomery Museum.

The defendants are the Montgomery city commissioners, as the three members of the governing body for the City of Montgomery, the chairman and the director of the Library Board, the Montgomery Museum Board, and the director of the Montgomery Museum.

The case is now submitted upon the pleadings, stipulations of the parties, depositions, oral testimony of witnesses taken before the Court, the exhibits to said testimony, and the briefs of the several parties filed at the conclusion of the hearing. Upon this submission this Court now in this memorandum opinion, as authorized by Rule 52, Federal Rules of Civil Procedure, makes and enters the appropriate findings of fact and conclusions of law.

Jurisdiction of this case is conferred by §§ 1331(a), 1343(3) and (4) of Title 28, United States Code Annotated; §§ 1983, 1985 and 1988 of Title 42, United States Code Annotated. The questions involved arise under the Fourteenth Amendment to the Constitution of the United States. The defendants do not seriously question the jurisdiction of the Court in this case. It has been stipulated and agreed that the building which houses the main library and museum in Montgomery, Alabama, was constructed with public funds and is presently being operated as a public institution. This case rests solely upon its facts. The complaint alleges discrimination; the defendants deny it. All parties recognize the law is well settled that if the public authorities discriminate, or attempt to

discriminate, in the operation of either the Montgomery Library or Museum so as to exclude any race or members thereof, while admitting another, or members thereof, then such action is in violation of the Constitution of the United States. Browder v. Gayle, D.C., 142 F.Supp. 707; 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114; Holmes v. City of Atlanta, D.C., 124 F.Supp. 290; 5 Cir., 223 F.2d 93; 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776; Moorhead v. City of Ft. Lauderdale, D.C., 152 F.Supp. 131; 5 Cir., 248 F.2d 544; Ward v. City of Miami, D.C., 151 F.Supp. 593; City of St. Petersburg v. Alsup, 5 Cir., 238 F.2d 830; and Tate v. Department of Conservation and Development, etc., D.C., 133 F.Supp. 53; 4 Cir., 231 F.2d 615, 352 U.S. 838, 77 S.Ct. 58, 1 L.Ed.2d 56. See also the Southern District of Alabama case of Sawyer v. City of Mobile, S.D.Ala., 1961; 208 F.Supp. 548; the Northern District of Alabama case of Shuttlesworth v. Gaylord (November 1961), D.C., 202 F.Supp. 59; the Middle District of Alabama case of Gilmore v. City of Montgomery, D.C., 176 F.Supp. 776; 5 Cir., 277 F.2d 364; and for a case almost exactly like the case now before this Court, see Giles v. The Library Advisory Committee of the City of Danville, Civil Action No. 452, W.D.Va., September 1960.

On March 15, 1962, the plaintiff, a Negro citizen of Montgomery, Alabama, along with several other members of his race, sought to use the library facilities of the main Montgomery Library located' at 445 South Lawrence Street, Montgomery, Alabama. The library had been established and was being operated with public funds as a public institution. The actual day-by-day supervision of the library was vested in the Library Board, as authorized by Title 55, §§ 285–287, 1940 Code of Alabama. The direct supervision of the operation of the library was vested through the Board in a library director. On April 5, 1949, the Library Board was created by an ordinance of the City of Montgomery by the authority of State law. This law confers "the government and supervision of

such libraries" in the Board. The Board is granted "full power and authority" to operate, manage and control the library. The Montgomery City Commission exercises control and supervision over the operation of the Board in that the Commission has the power to appoint the Board, power to abolish the Board or the library, power to fill vacancies, and the general supervisory and police power exercised by the municipal governing authorities in the State of Alabama.

Housed in the same building with the library, but separated for convenience and practical reasons, is the Montgomery Museum. On the same date, March 15, 1962, the plaintiff, along with several other members of his race, sought to use the museum and museum facilities. The authority that actually operates the museum is the Montgomery Museum Board. The creation of this Museum Board was under the authority of Alabama Act 467, 1959. The actual day-to-day operation of the museum is vested by the Board, with the approval of the Montgomery city commissioners, in a "director of museums." The city commissioners for the City of Montgomery exercise, generally, the same control and supervision over the museum that is exercised over the library.

Upon seeking to use the library facilities on said date, the plaintiff was told that he was not free to do so, the attendant stating, "We do not serve Negroes in this library." After browsing around the library for awhile, the plaintiff then went to the museum to view some of its relics. He was informed by the attendant that he would have to be a "member of the association" to get admitted except on Wednesdays when the museum was open to visitors. The plaintiff was refused advice on how to become a "member of the association." The other Negroes who accompanied the plaintiff on this occasion were accorded essentially the same treatment in both the library and museum. Subsequently, but on the same occasion, the plaintiff and several of those accompanying him, were summoned to the office of the li-

brary director. The director informed them, among other things, that if they did not leave, he would call the city police.

The City of Montgomery at that time, and, insofar as this Court knows, at the present time operates a branch library at Cleveland Avenue. This branch library is, for all practical purposes, used exclusively by members of the Negro race. This plaintiff and several of those accompanying him were members of the branch library and held library cards at the time they sought to use the main library facilities on the occasion in question. The significance of this particular point to this case is that the defendants claim the main Montgomery Library is not operated on a segregated basis, that the only reason the plaintiff and those accompanying him were not given free access to the library and library facilities is that they did not have library cards.

The Montgomery Museum, operated officially by the City through the Montgomery Museum Board, had some time prior to March 15, 1962, delegated the actual operation of the museum to a private organization known as the Montgomery Museum of Fine Arts Association, which came into being several years ago. It is composed of members who pay dues, contribute exhibits, and volunteer their personal services and monetary support to the operation of the museum. The director, employed by the official organization, the Museum Board, aids the Fine Arts Association in its operation of the museum. The museum was and continues to be, insofar as this Court knows, operated upon the following schedule: closed to everyone on Mondays; open to everyone on Wednesdays; closed on other days to all but members of the Montgomery Museum of Fine Arts Association, unless an appointment is made for a group that wishes a tour. The museum authorities state that such a method of operating the museum is common, and they seek to justify the preemptory and exclusive use of the museum on all days except Wednesdays by the fact that the members of the association make the contributions and give the necessary aid which make possible the operation of the museum. There are no municipal ordinances requiring segregation of the races in either the library or the museum.

It is apparent to this Court, and this Court now finds, that the main Montgomery Library located at 445 South Lawrence Street and the Montgomery Museum, at the same location, have been and are presently being operated upon a racially segregated basis, whereby the members of the Negro race in the City of Montgomery have been and are now being denied the right to use the main library facilities and the museum facilities solely because of their race or color. The evidence in this case indicated that "possibly" there was one member of the Negro race who held a library card which authorized the use of the main library facilities. The evidence further indicated that upon occasion certain Negro groups from Tuskegee and Stillman Institutes—Negro colleges—had been permitted to go through the museum on conducted tours which had been previously arranged through the Fine Arts Association. There was no evidence that any Negro had ever been permitted use of the museum or museum facilities as a member of the association. As a matter of fact, the evidence in this case shows without dispute that membership in the Montgomery Museum of Fine Arts Association is restricted to "any white person of good moral character * * *."

■ The basis for the operation of the library and the museum in a manner such as to make these two public facilities available only to certain members of the white race and to no members of the Negro race is one of policy, rule and custom adopted and followed by the defendants in this case. This Court cannot accept the defense that the library is operated on a nondiscriminatory basis, since it is judicially known that the City of Montgomery, Alabama, has over

46,000 Negro citizens.[1] It is inconceivable that there is only "possibly" one member of the Negro race who holds a library card to the main public library in Montgomery, Alabama, unless there is and has been an effective exclusion of members of that race. In this connection, see the "Rule of Exclusion" treated in the cases of Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866; United States ex rel. Goldsby v. Harpole, 5 Cir., 263 F.2d 71; and United States, ex rel. Seals v. Wiman (C.C.A.5, 1962), 304 F.2d 53. These cases, although not applying to public facilities, leave no question but that in certain circumstances courts may and should draw an inference from the fact that no person of a particular race has ever been a member of a certain group, although no direct proof is adduced that said exclusion is through willful discrimination in the selection of the particular group.[2] As to the museum, the manner in which that public facility has been and is now being operated, whether it be unintentional or deliberate, effectively excludes the members of the Negro race. It may be that the exhibits in the Montgomery Museum are, for the most part, privately owned. It may be that the City does not have the funds or the personnel to open the museum each day to all members of the public. However, this does not justify the delegation of exclusive authority and use of public facilities, even upon certain days, where such exclusive use results in the said public facilities being available only to members of one race and to the exclusion of members of another race. Such is the effect of the operation of the Montgomery Museum by the Montgomery Museum of Fine Arts Association on Tuesdays, Thursdays, Fridays, Saturdays and Sundays. In this connection, the contention by the defendants that the action of the Fine Arts Association is purely private action and not the action of the State authorities is untenable. See Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5; Derrington v. Plummer, 5 Cir., 240 F.2d 922; 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed.2d 719; Boman v. Birmingham Transit Co., 5 Cir., 280 F.2d 531; and Hampton v. City of Jacksonville (C.C.A.5, 1962), 304 F.2d 320.

■■ This Court now concludes that the defendants, and each of them, have in the past and are at the present time pursuing a policy, custom or usage which provides for the enforced exclusion of members of the Negro race in the use of the public library system and in the public museum, both located at 445 South Lawrence Street in the City of Montgomery, Alabama. The fact that other like facilities are available to plaintiff and members of plaintiff's race (i. e., the branch library) does not affect plaintiff's rights to the equal use of the main library and museum. Kansas City, Missouri v. Williams, 8 Cir., 205 F.2d 47. This Court further concludes that such action on the part of the defendants, their agents, employees, and those acting in concert with them, denies to the plaintiff and all other Negroes in the City of Montgomery their right to use said library and museum facilities; that such deprivation denies to the plaintiff and other members of his race similarly situated, rights guaranteed by the Fourteenth Amendment to the Constitution of the United States. This Court further concludes that the plaintiff, in this class action, is entitled to the use of the library and museum facilities in Montgomery, Alabama, on the same basis as white citizens. A formal order and injunction will be issued accordingly.

1. United States Census of Population 1960, United States Department of Commerce, Bureau of Census.

2. The evidence in this case abundantly establishes discrimination based upon race or color without resort to the "Exclusion" rule. The Court mentions it only to show the contention of the defendants—that there has been no discriminaion practiced in the past—as being untenable.