Cochyese **GRIFFIN** et al., Plaintiffs,

v.

**STATE BOARD OF EDUCATION** et al., Defendants.

Civ. A. No. 4075.

United States District Court
E. D. Virginia,
Richmond.

Argued Jan. 23, 1969.

Decided Feb. 11, 1969.

S. W. Tucker and Henry L. Marsh, III, Richmond, Va., for plaintiffs. (Jack Greenberg and James M. Nabritt, III, New York City, on the brief).

William L. Marbury, Sp. Asst. Atty. Gen., Virginia, Baltimore, Md., Robert Y. Button, Atty. Gen. of Virginia, R. D. McIllwaine, III, Asst. Atty. Gen. of Virginia, Richmond, Va., and Lewis A. Noonberg, Baltimore, Md., of counsel, for defendants, State Board of Education of the Commonwealth of Virginia and Woodrow W. Wilkerson, Superintendent of Public Instruction.

J. Segar Gravatt, Blackstone, Va., as Special Counsel and Thomas Stark, III, Commonwealth's Atty., for Amelia County, Amelia, Va., for defendant, Board of Supervisors of Amelia County.

J. Segar Gravatt, Blackstone, Va., as Special Counsel and L. J. Hammack, Jr., Commonwealth's Atty., for Brunswick County, Lawrenceville, Va., for defendant, Board of Supervisors of Brunswick County.

J. Segar Gravatt, Blackstone, Va., as Special Counsel and Douglas S. Mitchell, Commonwealth's Atty., for King and Queen County, West Point, Va., for defendant, Board of Supervisors of King and Queen County.

J. Segar Gravatt, Blackstone, Va., as Special Counsel and William R. Blandford, Commonwealth's Atty., for Powhatan County, Powhatan, Va., for defendant, Board of Supervisors of Powhatan County.

J. Segar Gravatt, Blackstone, Va., as Special Counsel and William F. Watkins, Jr., Commonwealth's Atty., for Prince Edward County, Farmville, Va., for de-

fendant, Board of Supervisors of Prince Edward County.

J. Segar Gravatt, Blackstone, Va., as Special Counsel and Ernest W. Goodrich, Commonwealth's Atty., for Surry County, Surry, Va., for defendant, Board of Supervisors of Surry County.

J. Segar Gravatt, Blackstone, Va., as Special Counsel and John F. Ewell, Commonwealth's Atty., for Warren County, Front Royal, Va., for defendant, Board of Supervisors of Warren County.

W. Clyde Gouldman, II, City Atty., Charlottesville, Va., for defendant, Council of the City of Charlottesville.

Leonard H. Davis, City Atty., Thomas R. McNamara, and Marshall T. Bohannon, Jr., Norfolk, Va., for defendant Council of the City of Norfolk, Virginia.

D. B. Marshall, Charlottesville, Va., and Geo. Stephen Leonard, Washington, D. C., for intervenors, E. J. Martin, and another.

Before BRYAN and BUTZNER, Circuit Judges, and HOFFMAN, District Judge.

ALBERT V. BRYAN, Circuit Judge:

The present and past school tuition grant laws of Virginia[1] are again assailed as violative of the equal protection clause of the Fourteenth Amendment[2]. In Griffin v. State Board of Education, 239 F.Supp. 560 (E.D.Va.1965) we quoted and enumerated the enabling authority and implementing statutes as well as the mechanics of distributing the moneys. No repetition is warranted, save a reminder of the then and current provision, viz.,

"Every child in this Commonwealth between the ages of six and twenty who has not finished or graduated from high school, and who desires to attend a nonsectarian private school located in or outside, or a public school located outside, the locality in which such child resides shall be eligible and entitled to receive a State scholarship in the amount of one hundred and twenty-five dollars per school year, if attending an elementary school and one hundred fifty dollars if attending a high school".[3]

A matching amount is payable by or imposable upon the local governments.[4]

I. In Griffin, supra, we upheld the Virginia laws. No racial discrimination was contained in their terms; children of every color were eligible to receive the benefits. There was no cunning denial, or diminution or discouragement of participation because of the fact that the applicant happened to be a non-white. Moreover, the touch of the State with the private school was negligible. Invidious purpose or intent was not demonstrable; we saw the plan as "an open, unmasked appropriation and disbursement of public moneys for a legitimate public function without reference to race".

Nevertheless, the court acknowledged that the plan could readily be converted into a contrivance for circumventing the established denouncement of public school racial segregation. This evil, we noted, would be effected if tuition moneys were fed into a private school or schools to such extent that they tended "in a determinative degree to perpetuate segregation". Without question by appellate review, we have since 1965 judged, and adjured the public authorities to judge, on this gauge when and where the tuitioners were in truth scofflaws.

In 1968, however, a more exacting test was impliedly enunciated by the Su-

---

1. Constitution of Virginia § 141; Appropriations Act, Item 759, Acts of General Assembly 1968, Chapter 806.

2. Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); Brown v. Board of Education, etc., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

3. Code of Virginia, 1950, as amended § 22–115.30.

4. Code of Virginia, 1950, as amended § 22–115.34.

preme Court. As a precedent paramount for us, the Court holds in our reading that the validity of a tuition plan is to be tried on a severer issue: whether the arrangement in *any* measure, no matter how slight, contributes to or permits continuance of segregated public school education. This pronouncement is uncompromisingly dictated in the Court's approval of the decrees striking down the tuition grant laws of Louisiana and South Carolina. Those judgments were delivered in Poindexter v. Louisiana Financial System Commission, 275 F.Supp. 833 (E.D.La., 3-judge, 1967) and J. Arthur Brown v. South Carolina State Board of Education, 296 F.Supp. 199 (D.S.C., 3-judge, May 1968). Testifying to the immediacy, thoroughness and completeness of the concurrence, both decisions were confirmed on motion without oral argument. Vide, 389 U.S. 571, 88 S.Ct. 693, 19 L.Ed.2d 780 (1968) and 393 U.S. 222, 89 S.Ct. 449, 21 L.Ed.2d 391. It is fair to say that the statutes of these two States are not so unlike Virginia's as to require a narration of their terms.

The test we now ascribe to the Supreme Court is derived through the instructive and comprehensive writing of the District Courts in *South Carolina State Board,* supra 296 F.Supp. 199, and *Poindexter,* supra, 275 F.Supp. 833. The historical background of the South Carolina Act was seen by the trial court to reveal a purpose, motive and effect to override the constitutional exclusion of segregation from public schools. In addition to its independent and squarely put legal conclusions, the Court largely relied on *Poindexter.*

*Poindexter,* in its reflective review of Lee v. Macon County, 267 F.Supp. 458 (M.D.Ala.1967) and other pertinent authorities—and now with the confirmation of the Supreme Court—found obnoxious and impermissible any "significant involvement" by the State in the subsistence of a segregated school. Altogether understandably, the Louisiana District Court disavowed any attempt "to devise a formula" for ascertaining

the existence of "significant involvement". But it intimated no exceptions or forbearance in the test.

■ To repeat, our translation of the imprimatur placed upon *Poindexter* by the final authority is that *any* assist *whatever* by the State towards provision of a racially segregated education, exceeds the pale of tolerance demarked by the Constitution. In our judgment, it follows, that neither motive nor purpose is an indispensable element of the breach. The *effect* of the State's contribution is a sufficient determinant, with effect ascertained entirely objectively. There is no room for an inquiry of quo animo, cf. Griffin v. Illinois, 351 U.S. 12, 17, fn. 11, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

■■ Against these criteria the Virginia statutes cannot stand. Indisputably, the State supplies the money; it comes from the public treasury; it goes to individual residents who may expend it for a segregated classroom. Thus, the Virginia payments are made available to help in giving life to an educational forum decried by the Federal Constitution. Possible misuse is a factor to be weighed. Reitman v. Mulkey, 387 U.S. 369, 380, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967).

An absolute and unequivocal prohibition is the logical effectuation of the intendment flowing from the recent rulings of the Supreme Court. Unless they are so interpreted, endless tribulation and trial can ensue. What percentage, if any, of the recipient school's expense is immune from condemnation would involve a reckoning with many variables. Constant and uniform factors would have to be assigned, fractional calculations made, allowances conceded for diverse conditions and a host of other items appraised. The process is too complex to be practicable.

■ The latter consideration defeats the assertion, for the validity of the statute, that grants can in individual instances be employed without fostering segregation. This supposition accepted,

still the canvassing and policing of the tuition law to confine its enjoyment to such instances would be a Herculean task. It could hardly give full assurance against the abuse of the law. A law may, of course, survive despite its unacceptable consequences, if the valid portions may be independently enforced. Here, as we see, there can be no such separation and the entire law must go.

We declare the statutes now to be of no vitality.

■ II. A liminal point made against the right of the plaintiffs to pursue this action rested on principles of res judicata or estoppel by judgment. The argument fails. Res judicata or estoppel cannot be pleaded successfully, for the decree of 1965 may be reopened under the permission of F.R.Civ.P. 60(b) (6). The intervening and supervening edicts of the Supreme Court, just discussed, qualify under the Rule as a "reason justifying relief from the operation of the judgment". They wiped out the possibility of acquitting the tuition grant upon the ground of the slightness of its offensive effect, whereas our decision had allowed the grant if it was not determinative in creating a forbidden school. This is a substantial change in the law and ended further viability of our decision. Now to continue its efficacy would be unjust to those initially and now affected by the order.

■ Again, when as here private litigation has extensive implications of public import, the rule of res judicata or estoppel is not allowed to stultify reassessment of the prior decision. The public interest supersedes the private interest. See Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 599, 68 S.Ct. 715, 92 L.Ed. 898 (1948); Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 669–670, 64 S.Ct. 268, 88 L.Ed. 376 (1944); Spilker v. Hankin, 88 U.S.App.D.C. 206, 188 F.2d 35, 38–39 (1951). See also 1B Moore, Federal Practice ¶ 0.405[11] (2d ed. 1965).

■ III. Though we annul the Virginia legislation, our decree will not require restitution of grants made in reliance upon the 1965 ruling. Wholly dissimilar in circumstance to Griffin v. County School Board of Prince Edward County, 363 F.2d 206 (4 Cir. 1966), cert. den. 385 U.S. 960, 87 S.Ct. 395, 17 L.Ed. 2d 305 (1966), where distribution of public moneys was held a contempt of court, presently the disbursements were made in utmost good faith, wholly without defiance of judicial decree and devoid of any semblance of maneuver to escape one.

■ Furthermore, today's conclusions do not prevent the continuance of tuition payments for the remainder of the 1968–1969 session. Pupils matriculated, and their parents assumed financial burdens, on the understanding that these moneys would be available to help in their education throughout the school year. Teachers and school facilities were also engaged on this premise. Destruction of this status in the middle of the term is not justified. The disruption would penalize persons quite innocent of any knowledge or intent of wrongdoing. Too, our restriction upon the State and its officers will include only grants of scholarships for the education of children eligible and qualified to attend the public schools of their county or city, not grants for the benefit of retarded, defective or otherwise unfortunate children.

An order will be entered declaring the Virginia tuition grant statutes invalid and enjoining the defendants from any payments thereunder after June 30, 1969, save as excepted in this opinion. Plaintiffs will recover their statutory costs but not counsel fees.

## ORDER ON MOTION FOR FURTHER RELIEF AND SUPPLEMENTAL COMPLAINT

Upon consideration of the record of the prior proceedings in this cause, and on consideration of the present pleadings, stipulations, evidence and arguments of counsel, on brief and orally, the court for the reasons set forth in its written opinion, which is now adopted

and filed herewith as a statement of its findings of fact and conclusions of law, ADJUDGES, ORDERS and DECREES:

1. That the several motions of the defendants to be dismissed as respondents to the plaintiffs' motion for further relief and supplemental complaint be, and each of them is hereby, denied;

2. That the provisions of the Constitution and statutes of the State of Virginia allowing and directing the payment of school tuition grants, and designated more particularly as Section 141 of the Constitution of Virginia and Sections 22–115.29 to 22–115.35, inclusive, of the Code of Virginia, 1950, as amended, contravene the Constitution of the United States; that the prayers of the said motion for further relief and of the supplemental complaint for a declaration of the invalidity of the said provisions of the Constitution and the statutes of the State of Virginia, be and they are hereby granted; and that the court now declare, and does hereby, that the said provisions of the Constitution and statutes of the State of Virginia shall be of no further force or effect because they contravene the Constitution of the United States;

3. That the defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise be, and each of them is hereby, restrained and enjoined from the payment of any tuition grant on and after June 30, 1969, but this injunction shall not restrain the payment of tuition grants for use prior to June 30, 1969, or prevent at any time the payment of grants for the benefit of retarded, defective or otherwise unfortunate children;

4. That the prayers of the said motion for further relief and of the supplemental complaint to require the State and local officials to reinstate and restore to the State treasurer or their respective local treasurers the moneys heretofore disbursed by them as tuition grants, under the said provisions of the

Constitution and statutes of Virginia, be, and the said prayers are hereby, denied;

5. That the plaintiffs recover their statutory costs of the defendants, but that counsel fees not be awarded to the plaintiffs; and

6. That jurisdiction of this cause be, and it is hereby, reserved by the court, and the case retained upon the docket, for such further action and entry of such additional orders as may be requisite or proper for the complete disposition of the matters here in controversy.