Benjamin F. HARDISON, Jr., Appellant,

v.

Clifford ALEXANDER, Jr., Secretary of the Army, et al.

No. 79–2485.

United States Court of Appeals, District of Columbia Circuit.

Argued 26 Nov. 1980.

Decided 26 May 1981.

Keith A. Rosenberg, Washington, D. C., for appellant.

John R. Fisher, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Scott T. Kragie, Asst. U. S. Attys., Washington, D. C., were on the brief for appellees.

Before BAZELON, Senior Circuit Judge, and ROBB and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

Concurring Opinion filed by Senior Circuit Judge BAZELON.

WILKEY, Circuit Judge:

This case turns on a straightforward application of the principles of res judicata in a factual setting complicated by the numerous occasions on which Hardison, a captain in the United States Army, has sought piecemeal relief from an accommodating Army bureaucracy.

Hardison's grievance is simple: he believes he was twice unfairly passed over for promotion to the rank of major, and thus, under the Army's up-or-out policy, marked for involuntary discharge from the service. To contest his scheduled release, Hardison instituted a series of administrative appeals within the Army and filed suit in the United States District Court for the Eastern District of Michigan, where he obtained a temporary restraining order which then led to a promise by the Army that he would not be discharged pending the outcome of his administrative appeals. After he had unsuccessfully exhausted his administrative remedies, however, the district court dismissed his case, Hardison did not appeal, and he was again scheduled for discharge.

At this point the story would seem to be at its end. But instead the Army agreed on several additional occasions to reconsider Hardison's case, while in the meantime retaining Hardison on active duty. Finally, after Hardison had been considered and reconsidered a total of eight times without being selected for promotion, the Army once again scheduled him for discharge. In the meantime, however, Hardison had brought a second action, this time in the United States District Court for the District of Columbia. The district court dismissed this second suit on the ground that it is barred by res judicata. Hardison now appeals.

We find that, at the time Hardison's first suit was dismissed, he had not only exhausted his administrative remedies but was in a

position fully to litigate the claims he now brings in his present action. Since his case was ripe for adjudication at the time of his first suit, we agree with the district court that Hardison's present action is barred by res judicata. We therefore affirm.

## I. THE ARMY'S PROCEDURES FOR ADMINISTRATIVE REVIEW OF A DECISION NOT TO PROMOTE

A critical question to be answered in this case is whether Hardison's claims were ripe for adjudication at the time his first action was dismissed. Before turning to consider the steps Hardison took prior to the dismissal of his first suit, we therefore pause briefly to examine the Army's promotion system and the avenues of administrative appeal available to an Army officer who believes himself wrongly to have been passed over for promotion.[1]

The Army's officer promotion system is an outgrowth of title V of the Officer Personnel Act of 1947, as amended (the first four titles deal with promotion procedures in other services).[2] Title V, which had been strongly supported by General Eisenhower after World War II, substituted promotion based on merit for what previously had been a seniority-based system.[3] By imposing a requirement that an officer be affirmatively selected for promotion rather than be promoted simply on the basis of time served, Congress sought in title V to improve the caliber of the Army's officer corps.[4]

The system inaugurated by the 1947 Act calls for the periodic convening of promotion selection boards which are required to rule favorably or unfavorably on all officers eligible for promotion as determined by their length of service at their present rank. Such selection boards are used whether the officers under consideration are Regular or Reserve officers, and whether they are being considered for promotion to a temporary or a permanent rank (all officers have a permanent rank, but officers on active duty may also be appointed to a temporary rank higher than their permanent rank, which they nonetheless retain). At the heart of this merit promotion system, and crucial to its effective functioning, is the requirement that officers twice passed over for promotion be discharged from active duty.[5] In principle at least, the Army's officer corps thus constantly is being pruned of deadwood, so that all officers on active duty are on their way up, motivated and capable.

When a Reserve officer is up for promotion, in addition to the Officer Personnel Act, a second enactment, the Armed Forces Reserve Act of 1952, controls Army procedures.[6] Referred to at the time of its passage as the "Reserve bill of rights,"[7] the the Reserve Act provides a variety of protections for Reserve members, including a provision requiring any board considering the promotion of a Reserve officer to include members drawn from the Reserves.[8]

1. For a general discussion of the Army's officer selection process see Ford, *Officer Selection Boards and Due Process of Law*, 70 Mil.L.Rev. 137 (1975). *See also Dilley v. Alexander*, 603 F.2d 914, 916–18 (D.C.Cir.1979); *Doyle v. United States*, 599 F.2d 984, 988–90 (Ct.Cl.1979).

2. Act of 7 Aug. 1947, ch. 512, 62 Stat. 795.

3. H.R.Rep.No.640, 80th Cong., 1st sess. 3 (1947).

4. *Id.*

5. Congress directed that an officer twice passed over for promotion to a permanent rank would be discharged from active duty. 10 U.S.C. §§ 3299(h), 3303 (1976); Army Reg. No. 624–100, ¶ 36 (29 July 1966) (hereafter cited as AR 624–100). Congress provided the Secretary of the Army the authority to promulgate regu-

lations determining the fate of Reserve officers passed over for promotion to temporary rank, 10 U.S.C. § 681 (1976), and the Secretary has provided that Reserve officers twice passed over for promotion to a temporary rank will be released or retired, Army Reg. No. 635–100, ¶ 3–65a (14 Jan. 1975) (hereafter cited as AR 635–100).

6. Act of 9 July 1952, ch. 608, 66 Stat. 481.

7. 98 Cong.Rec. 9017 (1952) (Rep. Van Zandt).

8. The Armed Forces Reserve Act was slightly modified in the process of congressional recodification of statutes regarding military service. Act of 10 Aug. 1956, ch. 1041, 70A Stat. 1. The provision requiring Reserve membership on selection boards considering the promotion of a

Selection boards consider officers for promotion on the basis of the records and reports concerning the officer retained in the officer's files. The Army provides an appeals procedure that enables an officer to challenge the material in his file if he believes it is prejudicially erroneous.[9] In considering such an appeal, the Army presumes that the material in an officer's file is correct, but an aggrieved officer may overcome this presumption if he succeeds in showing "clearly and convincingly" that action is warranted to correct a "material error or injustice."[10]

An officer wishing to appeal presents his evidence in writing to the Military Personnel Center (MILPERCEN) of the Department of the Army. Claims of administrative error are handled by MILPERCEN itself, while claims of substantive inaccuracy are forwarded to a Department of the Army Special Review Board for consideration. In the event the Army determines that the records in question were in error and a promotion selection board already has acted on the basis of the erroneous records, the officer's records are referred to a "standby advisory board" for reconsideration.[11]

The standby advisory board is presented with the records of a number of randomly chosen officers some of whom have recently been selected for promotion, and some, rejected. The standby board then rates the aggrieved officer's corrected record along with the other records before it. If it

awards the officer a rating equal to or better than the ratings it gives to the officers already selected for promotion, then he is promoted on the basis of his corrected record.[12]

An officer who fails to obtain satisfaction from MILPERCEN may appeal to the Army Board for the Correction of Military Records (ABCMR). The ABCMR is a board of civilians created by statute[13] and implementing regulations[14] to act as necessary with the Secretary of the Army to change any Army record in order to correct error or remove injustice. An appeal to the ABCMR is not only an officer's last resort within the Army—the ABCMR will not consider an application unless the applicant has exhausted all other practical remedies available[15]—but generally is prerequisite to litigation of the officer's claims in federal court.[16] While the ABCMR cannot act to stay any action being taken against an officer during the pendency of his appeal before it,[17] it has the power to award full reinstatement and back pay should it ultimately rule in the officer's favor.[18]

■ As we shall see, the appellant here appealed both to the MILPERCEN and to the ABCMR, and prior to the dismissal of his action in the Eastern District of Michigan, had received unfavorable rulings on all his claims from the ABCMR. He had thus exhausted his remedies within the Army and his case was ripe for judicial review when the Michigan district court dismissed his case and he failed to appeal.

Reserve officer is now codified at 10 U.S.C. § 266 (1976). It provide that:

    (a) Each board convened for the appointment, promotion, demotion, involuntary release from active duty, discharge, or retirement of Reserves shall include an appropriate number of Reserves, as prescribed by the Secretary concerned under standards and policies prescribed by the Secretary of Defense.

9. The appeals procedure is to be found in Army Reg. No. 623–105, ch. 8 (18 Aug. 1975) (hereafter AR 623–105).

10. *Id.* at 8–2.

11. *Id.* at 8–5a to –5c. *See also* AR 624–100, ¶ 18b; AR 135–155, ¶ 3–14b.

12. *See Doyle v. United States,* 599 F.2d 984, 990 (Ct.Cl.1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980).

13. 10 U.S.C. § 1552 (1976).

14. Army Reg. No. 15–185 (4 June 1974) (hereafter cited as AR 15–185).

15. *Id.* at ¶ 8.

16. *See, e. g., Knehans v. Alexander,* 566 F.2d 312, 315 (D.C.Cir.1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978).

17. AR 15–185, ¶ 9.

18. *Knehans v. Alexander,* 566 F.2d 312, 315 (D.C.Cir.1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978).

## II. PROCEDURAL BACKGROUND

### A. *Events Prior to the Dismissal of the Michigan Action*

The undisputed facts alleged by the appellant in his complaint and revealed by the record are as follows: Hardison began active duty in the United States Army Reserve in 1964, attaining the temporary rank of Captain by April 1967. Then in 1974 and 1975 he was twice passed over for promotion to the temporary grade of Major, and accordingly scheduled for discharge. Not wanting to leave the Army, Hardison sought relief both within the Army and from the courts.

From the outset, Hardison's challenges have been based on one or the other of two theories: (1) that the refusals of the 1974 and 1975 selection boards to promote him were void because the boards were improperly constituted in that they did not contain members of the Reserves as required by 10 U.S.C. § 266; and (2) that the actions of the boards were in any event tainted by the inclusion in Hardison's file of three Officer Efficiency Reports (OER's) that had been improperly prepared.

Key to our decision here is the fact that, after pursuing separate avenues of administrative appeal, Hardison brought an action in the United States District Court for the Eastern District of Michigan in which both theories were—or could have been—fully litigated. He lost in that court and did not appeal, but now has brought claims arising out of the same events first before the trial court and now before us.

Because Hardison chose to pursue his two theories through separate administrative appeals, it will aid understanding to trace separately the histories of these two strands.

First, we consider the appellant's challenges based on the improper constitution of his selection boards. After Hardison was notified in August 1975 that he was about to be released from active duty, he, along with other officers, filed applications with the Army Board for Correction of Military Records (ABCMR) challenging the membership of the selection boards that had passed over him. He then filed a complaint in the United States District Court for the Eastern District of Michigan asking in part for a preliminary injunction barring his release pending a decision by the ABCMR on this and other claims discussed below. After the Michigan court entered a temporary restraining order, the parties agreed Hardison would not be released from duty pending a decision by the ABCMR. In time the ABCMR recommended that the 1974 and 1975 selection boards be reconstituted to include Reserve officers but otherwise to mirror the original boards. The military records of each officer were to be reconstructed to appear as they had when the original boards met and the same criteria were to be applied. The new boards, dubbed "Relook Boards," convened in the summer of 1976. Again Hardison was not selected for promotion; the ABCMR accordingly concluded that the failure of the 1974 and 1975 boards to select him had been neither erroneous nor unjust.

At this point, with Hardison's suit still active in the Eastern District of Michigan and Hardison's release from active duty deferred, we turn the clock back to consider the second strand of Hardison's challenges, those based on the second of his two theories, the argument that invalid Officer Efficiency Reports had improperly been included in his files and considered by the selection boards. Specifically, Hardison challenged three OER's covering his performance during three periods between 21 June 1971 and 28 May 1972 (OER No. 1), between 29 May 1972 and 7 November 1972 (OER No. 2), and between 8 November 1972 and 11 May 1973 (OER No. 3). Hardison first filed three separate administrative appeals of these OER's with MILPERCEN, but each appeal was denied. Then, with his release from active duty imminent, he filed an application with the ABCMR challenging all three OER's. Finally, a little over a week later, he filed the complaint in the Eastern District of Michigan to which we have previously referred. Before the court, however, he did not expressly challenge the validity of OER's Nos. 1 and 3, but complained only that OER No. 2 had been fraudulently prepared, causing him to be passed over for promotion.

The ABCMR considered Hardison's challenges to all three OER's while Hardison's release from active duty was being deferred pursuant to the agreement of the parties to the Michigan suit, and finally, on 13 October 1976, it advised him that it had found that there was insufficient evidence to indicate probable material error or prejudice in any of the three OER's in dispute. The ABCMR having ruled against Hardison on each of his theories, the Army rescheduled him for release from active duty.

Now—with both Hardison's theories rejected by the ABCMR but with his action still pending in the Michigan court—we bring back together the two strands of Hardison's challenge to his impending discharge. On the day of his rescheduled release, 20 December 1976, Hardison once again applied to the Michigan court for a temporary restraining order, this time to bar his release until the court had a chance to review his claims against the Army and rule on his request for an injunction against his discharge; once again the Army agreed to a deferral. The Army then moved for summary judgment. In his memorandum to the court in response Hardison requested preliminary injunctive relief pending a trial on the merits of his claim that OER No. 2 had been improperly prepared, but did not address the remaining issues presented in his various applications to the ABCMR.

The Michigan court decided for the Army in a memorandum opinion dated 27 May 1977. Noting that Hardison had failed to amend his complaint during the long pendency of his action, the court held that summary judgment was appropriate because the relief requested by Hardison in his complaint had been fully granted: he had been retained on active duty while the ABCMR reviewed his applications. The court went on to conclude that if Hardison had amended his complaint to encompass the claims regarding OER No. 2 enumerated in his memorandum·opposing summary judgment, judgment against him would still have been appropriate because the ABCMR's decision

had been neither arbitrary nor capricious. Accordingly, on 10 June 1977 the Michigan court dismissed Hardison's complaint and entered judgment for the Army. Hardison did not appeal.

B. *Events After the Dismissal of the Michigan Action*

Despite his failure to appeal, Hardison did not give up altogether. Instead, with his release from active duty imminent, he requested the ABCMR to reconsider his application for correction of his records with respect to OER No. 2, and in August 1977 the ABCMR agreed to remove OER No. 2 from Hardison's records and submit his file to standby advisory boards for reconsideration for promotion. In the meantime, Hardison remained on active duty.

Unfortunately for Hardison, he was once again twice passed over for promotion, and once again advised he would soon be released from active duty.

■ Then, in May 1979, Hardison requested the ABCMR to reconsider his case yet again, this time with respect to possible faults with OER No. 1 and OER No. 3. The ABCMR once again consented to reconsider Hardison's case. This time however, perhaps in view of its power to grant reinstatement and back pay,[19] the ABCMR refused to act on his application before his release from active duty.

Hardison then filed the present action in the United States District Court for the District of Columbia; once again, by agreement of the parties his release was deferred. Ultimately, the ABCMR refused to change its earlier decision on OER No. 1 and OER No. 3, but MILPERCEN nonetheless changed the two OER's in minor ways and referred Hardison's files to standby advisory boards for two more reconsiderations.

Once more, Hardison was twice passed over for promotion and scheduled for release from active duty.

---

19. An officer may be required to submit to discharge from active duty pending the exhaustion of his administrative remedies through application to the ABCMR before bringing an action in United States District Court. *See Davidson v. United States*, No. 518–77 (Ct.Cl. 9 Mar. 1979).

Finally, the government having filed a motion to dismiss, the district court, noting that all of Hardison's administrative appeals were "outgrowths of the issues raised in his two 1975 administrative petitions,"[20] ruled against Hardison on the basis that his present action is barred by res judicata. This appeal followed.

## III. ANALYSIS

█ The doctrine of res judicata is so familiar that it is unnecessary here to rehearse more than its bare outlines. In brief, the doctrine is designed to conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation. Under the doctrine, the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate—even if they chose not to exploit that opportunity—whether the initial judgment was erroneous or not.[21] The appeal process is available to correct error; subsequent litigation is not.

█ For the purposes of the present litigation, then, we may thus assume (without deciding) that Hardison's underlying claims are entirely meritorious, that the disputed OER's were improperly included in his file and that the 1974, 1975 and 1976 boards that considered and reconsidered his promotion were improperly constituted and prejudiced by the erroneous material in the files. For it is almost axiomatic that once having exhausted his administrative remedies, brought suit in federal court and lost on the merits, Hardison can no longer litigate the propriety of his discharge on either of the two theories available to him at the time of his first suit: that certain of his OER's were improperly included in his file and that his promotion selection boards were improperly constituted.

Hardison makes two principal arguments on his behalf.

█ First, Hardison argues that this court's decision in *Dilley v. Alexander*[22] somehow renders the application of res judicata inappropriate. In *Dilley* we found the absence of Reserve officers on the 1974 and 1975 selection boards to violate 10 U.S.C. § 266; in addition, we concluded that the decisions of the reconstituted selection boards convened by the Army in 1976 were not sufficient to repair the damage resulting from the improper constitution of the 1974 and 1975 boards.[23] *Dilley* did not in any meaningful way "change" the law; it merely applied 10 U.S.C. § 266 in a straightforward fashion. The statute requires that promotion boards considering Reserve officers have Reserve membership. Not surprisingly, then, in *Dilley* we found that the absence of Reserve membership on the 1974 and 1975 boards violated the law.

█ But even had *Dilley* marked a dramatic shift in the law in this Circuit, Hardison's position would be little affected. For, as Judge Parker noted in his opinion for the district court,[24] civil judgments, unlike criminal convictions, cannot be collaterally attacked on the basis of subsequent judicial pronouncements. In civil litigation, "a retroactive decision can affect only suits pending in the courts or not yet brought, but cannot be raised by previously unsuccessful litigants."[25] To be sure, on rare occasions the courts have been willing to override the bar of res judicata for reasons of compelling public policy.[26] But this case hardly involves anything like the paramount ques-

---

20. Memorandum Opinion at 3, *Hardison v. Alexander*, No. 79–1420 (D.D.C. 19 Nov. 1979).

21. *See* 1B Moore's Federal Practice ¶ 0.405[4.–11], at 637; *Id.* ¶ 0.415, at 2051 (2d ed. 1980).

22. 603 F.2d 914 (D.C.Cir.1979), *clarified*, 627 F.2d 407 (D.C.Cir.1980).

23. *See also Doyle v. United States*, 599 F.2d 984 (Ct.Cl.1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980).

24. Memorandum Opinion at 4, *Hardison v. Alexander*, No. 79–1420 (D.D.C. 19 Nov. 1979).

25. *Zweibon v. Mitchell*, 606 F.2d 1172, 1177 (D.C.Cir.1979).

26. *See, e. g., Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594 (5th Cir.), *cert. denied*, 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 132 (1977); *Griffin v. State Bd. of Educ.*, 296 F.Supp. 1178 (E.D.Va.1969).

tions of constitutional law [27] or exclusive jurisdiction [28] that have been required in the past to overcome the normal application of res judicata. We therefore find Hardison's first argument to be without merit.

Hardison next argues that he is now raising a new cause of action unrelated to his previous suit in that he is now attacking the Army's decision to discharge him after he was passed over a total of four times by standby advisory boards convened *after* his Michigan lawsuit was dismissed. He argues that these standby advisory boards did not have authority "to issue a passover or nonselection" so he has "never been validly nonselected for promotion." [29]

■ The argument is untenable. Hardison brought suit to challenge the manner in which the Army had passed over him for promotion and consequently marked him for discharge—and lost. When Hardison failed to appeal the unfavorable summary judgment ruling of the Michigan court, he permitted the judgment of that court to become final, and forever lost the right to relitigate the issues he had an opportunity to raise before that court: the validity of OER's Nos. 1, 2 and 3, and the constitution and actions of the 1974, 1975 and 1976 promotion selection boards. *It is therefore beyond doubt that had the Army moved promptly to discharge Hardison following the outcome of his Michigan action, Hardison could not have sought relief from the courts. As far as the law is concerned, the actions of the 1974, 1975 and 1976 boards are now beyond challenge by Hardison.* Whether they were properly constituted or not, and whether they considered erroneous OER's or not, it is now too late for relitigation of those questions in Hardison's case. The courts are thus precluded from ruling that Hardison has "never been validly nonselected for promotion." [30]

But the Army did not discharge Hardison in 1976. Instead, it twice agreed to reconsider his case and afforded him four more opportunities to be selected for promotion by standby advisory boards, though none of the four acted in Hardison's favor. We may therefore ask whether somehow the Army waived the effect of the Michigan judgment by agreeing to reconsider Hardison's case and thereby resurrected Hardison's cause of action growing out of his failure to be selected for promotion by the 1974 and 1975 boards.

Even if we had the freedom so to rule, it would be unwise for us to do so, for we would thereby chill the willingness of agencies to reconsider an agency decision after first obtaining a favorable judgment as a defendant in a lawsuit. We can assume that the ABCMR had good reasons to provide Hardison with four more chances to be promoted by standby advisory boards; it is not our place to secondguess the ABCRM's willingness to permit Hardison to parcel out his administrative appeals on what appears to the outsider as a piecemeal basis. Assuming that, despite his loss in the Michigan court, Hardison's case had some merit, we can only applaud the willingness of the Army to attempt to rectify its errors. It therefore would be inappropriate for us to penalize the Army for its flexibility by now finding that it waived its rights to the res judicata effect of the Michigan judgment when it agreed to reconsider Hardison's case. Such a ruling would only serve as a disincentive to future flexibility.

■ Furthermore, the doctrine of res judicata serves not only the interests of the winning party in a lawsuit, but also the interests of the public in conserving judicial resources, avoiding inconsistent results and engendering respect for final court judg-

---

27. *Moch*, for example, involved the constitutionality of multi-member districts used in apportioning school boards, while *Griffin* involved the constitutionality of state tuition grants to private schools. The *Griffin* court observed that the litigation before it had "extensive implications of public import" sufficient to supersede the rule of res judicata. 296 F.Supp. at 1182.

28. *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (where Federal Bankruptcy Act vested exclusive jurisdiction in the federal court, collateral attack in a federal court on a state court judgment is permissible to effectuate the federal act).

29. Brief for appellant at 15.

30. *Id.*

ments. These policy interests suggest that we should act with caution before we find an implicit waiver of the res judicata effects of a judgment.

■ But we do not need to reach these questions, for this court has previously ruled that an action by a standby advisory board is "simply an act of administrative grace about which [an] appellant can scarcely complain." [31] As far as the outcome of such administrative grace is concerned, an officer must "take 'the bitter with the sweet' " [32] or, for that matter, "the sweet with the bitter." [33]

### IV. CONCLUSION

We thus affirm the district court's ruling that the doctrine of res judicata prohibits Hardison from relitigating the basis for the Army's decision to discharge him from active duty. In so doing, of course, we are not required to consider the underlying merits of Hardison's case, and have not done so. The judgment of the district court is

*Affirmed.*

BAZELON, Senior Circuit Judge, concurring:

I concur, but I write separately to highlight two matters I believe to be implicit in the court's opinion. First, the doctrine of res judicata does not apply to claims arising after the litigation in Michigan. Second, an act of administrative grace is not *ipso facto* shielded from judicial review.

Prior to his Michigan suit, Hardison had allegedly never been considered for promotion by a properly constituted selection board. He could have litigated that issue as part of the Michigan action; he could have appealed, on that ground, the Michigan court's failure to enjoin his involuntary release from the Army. The release scheduled for July 1977 is therefore res judicata.

After the Michigan suit, the Army corrected Hardison's record and reconsidered his promotion by means of standby advisory boards. He was again passed over and scheduled for release in 1979. These actions arguably give rise to a new claim. Hardison asserts that the standby advisory boards were not properly constituted to consider his promotion. These boards are, however, the bodies which normally (and lawfully) re consider promotions after personnel records have been corrected. *See Knehans v. Alexander*, 566 F.2d 312, 314–15 (D.C.Cir.1977), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978). The standby advisory boards have thus not been "substituted" for regular promotion selection boards, but acted well within their authority. After considering Hardison's corrected record, they refused to grant a promotion. Since Hardison's complaint alleges no other unlawful action—such as discrimination, for example—it simply fails to state a claim upon which relief can be granted.

---

**31.** *Knehans v. Alexander*, 566 F.2d 312, 315 (D.C.Cir.1977), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978). *See also Coughlin v. Alexander*, 446 F.Supp. 1024, 1027 (D.D.C.), *aff'd mem.*, 589 F.2d 1115 (D.C.Cir. 1978).

**32.** *Knehans v. Alexander*, 566 F.2d 312, 315 (D.C.Cir.1977), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978).

**33.** *Hadley v. Secretary of the Army*, 479 F.Supp. 189, 194 (D.D.C.1979). In *Hadley*, a doctor who had been educated at military expense was twice passed over for promotion but then, not at his behest, reconsidered and promoted by a standby advisory board. Wanting to return to civilian life, he contested his "wrongful" promotion by the standby advisory board.